THE UNION NATIONAL BANK *v.* EDWARD HINES,

and

EDWARD HINES *v.* THE UNION NATIONAL BANK.

*Opinion filed December 21, 1898—Rehearing denied February 8, 1899.*

| 177 | 417 |
|-----|-----|
| 88a | 29 |
| 88a | 245 |
| 177 | 417 |
| s187 | 110 |
| 177 | 417 |
| 108a | ¹167 |

1. BILLS AND NOTES—*purchaser of non-negotiable note takes subject to maker's equities.* A promissory note marked on its face "This note is non-negotiable," is a non-negotiable instrument, and while a transferee may acquire the legal title thereto, he takes subject not only to the existing rights of the maker, but to any rights accruing to him before notice of the transfer.

2. SAME—*what a valid set-off in suit by transferee of non-negotiable note.* The maker of a non-negotiable note who subsequently agrees to guarantee notes of the payee to the extent of the amount due on the former, with the understanding that if required to take up the guaranteed notes he should hold them as a defense to his own, is entitled, upon being required to pay such notes, to set them off in a suit on the non-negotiable note by the transferee thereof, of whose rights the maker had no notice at the time of the guaranty.

3. EVIDENCE—*what does not show that guaranty was written and copied later than its date.* The facts that a letter-press copy of a guaranty is somewhat discolored and shows that the original was crowded on the same page with another letter, and that certain defects of the type machine appearing in the copies of other letters of the same date are absent from the copy of the guaranty, are not conclusive that the guaranty was written and copied later than its date, particularly where two type machines of the same make were in use in the office where the guaranty was written.

*Hines* v. *Union Nat. Bank,* 69 Ill. App. 518, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

These two appeals, which involve the same matter, grew out of a suit in equity originally begun in the superior court of Cook county by Edward Hines, complainant, against the Union National Bank of Chicago and S. B. Barker, defendants, to enjoin the bank from selling certain stock of the Edward Hines Lumber Company which it held as collateral security.

177—27

The facts alleged in the bill are, that on September 29, 1892, Edward Hines executed and delivered to S. B. Barker a promissory note, as follows:

"$15,000.                              CHICAGO, *June 27, 1892.*

"On or before May 1, 1895, after date, I promise to pay to the order of S. B. Barker, fifteen thousand dollars, at his office in Chicago, value received, with interest at seven per cent from date until paid.                    EDWARD HINES."

Across the face of this note, at the time of its execution, was written in red ink, "This note is non-negotiable." It is alleged that the note was executed September 29, 1892, but dated back to June 27, even date with a certain other note executed by S. B. Barker to the Edward Hines Lumber Company, a corporation; that it was expressly agreed that this note should be non-negotiable; that the reason it was so made was to protect Hines against loss by failure of Barker to carry out the terms of a certain agreement between the parties looking to the organization, management and control of the Edward Hines Lumber Company; that on September 29, 1892, Hines delivered to Barker, as collateral security for the payment of his $15,000 note, 150 shares of the capital stock of the Edward Hines Lumber Company, of the par value of $100 per share; that thereafter, March 21, 1893, Barker requested Hines to guarantee the payment of certain notes which he (Barker) was then about to deliver to the firm of McElwee & Carney; that this request was contained in a letter written to Hines, as follows:

"CHICAGO, *March 21, 1893.*

"*Friend Hines*—I bought a lot of lumber from McElwee & Carney during Mr. Carney's absence, giving them my notes for it. Carney has just returned and says they have too much of my paper, and wishes to return the notes and cancel the sale unless I can give him other paper or security. This I cannot conveniently do just now. As I have relied on this lumber for spring trade I want you to help me out by endorsing the notes or guaranteeing the same, so that I can get the lumber. This I feel will be satisfactory to Mr. Carney, and you will be amply

safe in doing so, as I always pay my paper promptly and as I hold your note for $15,000 and interest, though not due until May 1st, 1895, and as I talked with you considerably how it is made out, I cannot make use of it. When I have helped you, surely you ought to try and return the favor. I will rely upon your doing so. I will be easier soon, as trade will be better and I intend to crowd sales. Come down to-morrow and let me know if you will do so.                      "Very truly yours,

                                                      S. B. BARKER."

It is then alleged that on March 22, 1893, in pursuance of this request, relying on the fact that Barker then held his note for $15,000, Hines executed to McElwee & Carney the following instrument:

"*Messrs. McElwee & Carney, City:*               "*March 22, 1893.*

"GENTLEMEN—I am in receipt of a letter from S. B. Barker requesting me to endorse or guarantee some notes which Mr. Barker owes you for lumber purchased by him from you. I do not care to place my name on paper which is to be put in circulation, but, as you know, Mr. Barker holds my non-negotiable promissory note for $15,000, with interest at seven per cent, and which matures May 1st, 1895, at which time there will be due thereon about $18,000. I have told Mr. Barker, while I will not endorse his paper I will guarantee the same to the amount which will be due on my note which he holds, when the same becomes due, provided that if Mr. Barker fails to pay the notes which he gives to you I shall be given time on my liability until my note to him matures. If you care to accept his notes with my guarantee upon the above condition you can do so, and hold this letter as evidence of my obligation.

                      "Very truly yours,        EDWARD HINES."

It is further alleged that on March 22, 1893, said McElwee & Carney accepted this guaranty and accepted the notes executed by Barker to them, and delivered the lumber purchased by Barker with the notes and guaranty; that at the time Barker requested Hines to guarantee the notes to McElwee & Carney he owned and held and had in his possession the Hines note for $15,000 and the collateral stock in the Edward Hines Lumber Company, and that afterwards Barker, for the purpose of defrauding

Hines, attempted to pledge said note and stock to defendant, the Union National Bank of Chicago, as collateral security for a large debt then owing it by him, and that the bank then knew Barker held said stock as collateral security to the $15,000 note, and not otherwise; that in May, 1893, after Hines had executed his guaranty to McElwee & Carney, Barker became absolutely insolvent and has remained so ever since, and consequently defaulted in the payment of his notes to McElwee & Carney, which were four in number, dated March 16, 1893, aggregating $16,426.06; that when Barker became insolvent, McElwee & Carney looked to complainant, Hines, to take up these notes under his letter of guaranty, and that he was obliged to and did take up and make payment thereof to McElwee & Carney in pursuance to the terms of said guaranty, and McElwee & Carney thereupon endorsed the notes without recourse and delivered them to him, the said Hines, who has been and now is the owner of and in possession of the same; that at the time Hines entered into the guaranty to McElwee & Carney, and at the time he paid the notes under his guaranty, he had no notice or information that the defendant bank had or claimed any interest in said $15,000 note or the stock accompanying it, nor did he know that Barker had transferred, pledged or parted with the possession of the note or certificates of stock, nor did he have any notice that the bank had or claimed possession of, or any right to or interest in, such note or certificates of stock until after the maturity of said note.

The bill then avers that on May 16, 1895, the bank began an action of assumpsit in the circuit court of Cook county against the complainant on the $15,000 note, to which he pleaded *actio non*, and set up the guaranty on the Barker notes to McElwee & Carney as a defense to the amount of their face; that Hines has tendered the difference between his note to Barker and Barker's notes to McElwee & Carney (the sum of $217.93) to the bank

and demanded the return of the certificates of stock to himself; that on March 17, 1896, the bank served notice that it would, on March 28, 1896, sell the stock at public sale; that the date of sale was afterwards postponed, by stipulation, to April 4, 1896. Then followed a prayer, asking that the bank be enjoined from disposing of the certificates of stock pending the determination of this action, for an accounting, etc.

The separate answer of S. B. Barker, filed April 8, 1896, admitted the execution of the note of $15,000 by Hines, and also the contract between Hines and Barker looking to the organization and control of the Edward Hines Lumber Company, and also the execution of the notes by himself to McElwee & Carney, but denied that he did, on March 21, 1893, or at any other time, request Hines to guarantee notes to McElwee & Carney, as stated in the bill; alleges that some time after July 1, 1894, more than a year after his financial failure, Hines presented to him the draft of a proposed letter, like that set forth in the bill, and desired him to copy and sign it in his own handwriting and deliver it to him, Hines, to the end that he might use it to defend against the payment to the Union National Bank of the $15,000 note then held by the bank; that defendant did copy the same and deliver it, as requested. He alleges, on information and belief, that, about the same time he copied the letter as requested, Hines executed his letter of guaranty dated March 22, 1893; also, that the Hines note of $15,000 and certificates of stock were both transferred to the Union National Bank about October, 1892, as collateral security for money then owing by him to the bank and money thereafter to be loaned by the bank to him, and that the said bank did loan him money on that and other securities thereafter, and that $100,000 of the same still remains unpaid.

The separate answer of the Union National Bank, filed April 8, 1896, admitted the execution of the Hines and Barker notes, and alleged that the Hines note of $15,000,

and the stock with it, were transferred to it in October, 1892, by Barker, as alleged by him; admitted the tender by Hines of $217.93; alleged that after Barker had hypothecated the $15,000 note, and after the financial failure of Barker, occurring May 29, 1893, and after Hines had notice of the transfer of the note to the bank, Hines conceived the idea of concocting a fraudulent defense to the note. Then follow the allegations of fraud, similar to those contained in the answer of Barker. It also filed a cross-bill against Hines and Barker, seeking to establish its lien on the Hines stock and to have it sold under directions of the court.

A trial was had and the evidence taken in open court, and a decree was entered June 29, 1896, in favor of the defendant, the Union National Bank, Barker defaulting. The court found, substantially, that Hines executed the note for $15,000 to Barker, as alleged in the original bill, and assigned to Barker 150 shares of stock in the Edward Hines Lumber Company as collateral security to the same; that afterwards, as early as two or three days prior to May 29, 1893, Barker endorsed this note and delivered the same, together with the certificates of stock, to the Union National Bank of Chicago as security for his indebtedness to that bank; that the bank still holds the note and stock and is entitled to the amount due upon the note, and entitled to enforce the payment by a sale of the stock as pledged; that at the time the bank received the stock and note from Barker it had actual knowledge of the fact that Barker held the stock as collateral security for the payment of the note; that Barker did not, on or about March 21, 1893, request complainant, Hines, to guarantee the payment of notes which Barker had given to McElwee & Carney, nor did Barker then write the letter of that date addressed to Hines, nor did Hines, on or about March 22, 1893, execute and deliver to McElwee & Carney his guaranty in writing, but both of said documents were executed long after their apparent

date and after the failure of Barker, and were executed for the fraudulent purpose of creating evidence of an apparent defense to the $15,000 note; that Hines obtained the notes from Barker to McElwee & Carney, and had the same endorsed without recourse and delivered to him about June 1, 1893; that he paid nothing for the notes at the time he received them, and has at no time paid to McElwee & Carney to exceed $1000 for such notes; that there is due the bank from Hines $19,000 on his note. Then follows an order directing the master to sell the stock and pay the bank the amount owing to it, etc.

Upon this decree being filed, motion was made by the complainant for a rehearing, supported by numerous affidavits and oral evidence, but the motion was denied. Afterwards he presented his petition for leave to file a bill of review, but the prayer of that petition was also denied. From the decree finding for the defendant, the Union National Bank, on the original bill, and also the order refusing leave to file a bill of review, complainant, by separate appeals, took the cause to the Appellate Court, where the principal decree was reversed and the order affirmed. Both parties now appeal to this court, the defendant below from the judgment of affirmance and the complainant from that of reversal.

TENNEY, MCCONNELL, COFFEEN & HARDING, for the Union National Bank.

MORAN, KRAUS & MAYER, for Edward Hines.

Mr. JUSTICE WILKIN delivered the opinion of the court:

We concur in the view of the Appellate Court that it is immaterial when the bank acquired possession of the $15,000 note and the stock certificates, there being no dispute as to the fact that Hines had no notice of the transfer of possession from Barker to the bank until long after he claims to have made the contract of guaranty to McElwee & Carney, and after he had acquired the notes

given by Barker to them. The note, with the statement on the face, "This note is non-negotiable," was a non-negotiable instrument, and while it could, notwithstanding that fact, be transferred to a third party so as to vest him with the legal title, he could only take it subject to the then existing rights of the maker, and such other rights as might accrue prior to his receiving notice of the transfer.

While it is doubtless true, as said in the opinion of the Appellate Court, as a proposition of law, that Hines could set up the Barker notes in defense of an action upon his note if he received them before notice that the bank had acquired the ownership of his note, no matter whether he received the Barker notes because of his being a guarantor for Barker to McElwee & Carney or not, yet we are unable to concur in the view that upon this bill it is immaterial whether he obtained them by reason of such guaranty or not. The bill bases the right to offset these notes upon the allegation that the guaranty was made, and that in pursuance thereof the notes were taken up. If it is true, as alleged in the answers of Barker and the bank, that the pretended guaranty was wholly fictitious and fraudulent, gotten up with a design to manufacture that defense to the notes, a court of equity would not lend its aid to carry out that scheme, notwithstanding it might be truly said he had a meritorious defense simply as the holder of the notes. Hines' title to the notes therefore is, under his allegations, made to depend upon the guaranty, and in our view of the case the controlling question here must be, was such a guaranty made? In view of the fact that the chancellor who heard the cause and the judges of the Appellate Court have reached different conclusions upon this question, which is purely one of fact, we have endeavored to give the fullest and most careful consideration to all the testimony bearing upon it. Giving due weight to the fact that the chancellor heard the oral testimony in open court, we cannot

escape the conviction that the clear preponderance of the proof is against his finding and in favor of that of the Appellate Court.

The contention that no guaranty was in fact given, and that the claim based upon it as a defense to the $15,000 note is a fabrication, rests largely, if not altogether, upon the testimony of S. B. Barker, who cannot be said to stand fair before the court. He admits that he was a willing party to the wicked and fraudulent scheme which he swears Hines concocted to defeat a recovery upon his note, and his testimony, on the hearing as to the alleged fraud, is wholly inconsistent with and contradicted by statements shown to have been made by him prior thereto. His evidence, under all the facts shown, is of very little value. On the other hand, Hines swears positively that the guaranty was given as alleged in his bill, and denies the charge of fraud in manufacturing a defense to the note in every particular.

Counsel for the appellant bank attach great importance to the fact that the copy of the guaranty letter by Hines to McElwee & Carney appears in the letter-press book crowded on a page upon which another letter of the same date had been copied, and that the paper upon which the copy was impressed was discolored; also to the fact that letters copied into the same book, preceding and following this copy, show that the typewriter in use by Hines March 22, 1893, wrote the letter "o," whenever it followed the letter "n," above and out of alignment with the "n" and other letters, it being earnestly insisted that these facts appearing from his own letter-press book show that the guaranty letter was gotten up by Hines, as testified to by Barker, long after the time it purports to have been written. The fact that other letters written about that time by Hines or for the Hines Lumber Company, with which he had his office, showed that a machine was used which was out of order, as indicated, is in no way inconsistent with the claim that the letter in

question was written and copied as of the date shown, unless it can be said that there is evidence tending to show that Hines claimed to have had the letter written upon the machine so out of repair, or that it was the only one then in use by him or the lumber company, neither of which is shown or attempted to be shown. In fact, the evidence tends to prove that two typewriters were in use at that time, both of the same make. As said by the Appellate Court, the discoloration on the letter-press copy might have occurred from a variety of causes; and besides, the discoloration does not appear to be confined to that sheet or page alone, when the whole book is examined. The position of the copy on the page of the book is somewhat irregular, as compared with the general manner of using the book, but we do not think it can be fairly said that this fact necessarily proves that it was placed there long after it purports to have been written. The most that can be said is, that enough is shown by the letter-press book to raise a suspicion in favor of the testimony of Barker and against that of Hines.

But the fact that the guaranty was given *bona fide* and at the time alleged does not depend upon the testimony of Hines alone. Mr. Carney, of McElwee & Carney, swears to the fact that it was made as shown by the letters of March 22, 1893, and he fully corroborates Hines in the material parts of his evidence on that subject. There is nothing in the record, so far as we have been able to discover, tending to discredit Mr. Carney's testimony. He is not shown to have any interest in the result of the suit. His testimony is reasonable, and requiring the guaranty, as he and Hines both say was done, was consistent with business experience and common prudence. Even as between Barker and Hines the testimony of the latter seems to us by far the more reasonable. He appears to be a man of experience in business and of financial ability. It is not easy to conceive why such a man should have taken the trouble to concoct a pretended scheme of get-

ting possession of the Barker notes under a guaranty which he could only hope to carry out by willful and corrupt perjury.

We are satisfied there is no error in the judgment of the Appellate Court in reversing the decree below, the allegations of the bill being substantially proven upon the hearing. This view settles all contentions raised in both cases, and the action of the Appellate Court will accordingly be affirmed as to both appeals.

*Judgment affirmed.*