THE NORTHERN TRUST COMPANY *et al.*

*v.*

THE VILLAGE OF WILMETTE *et al.*

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. BONDS—*local improvement bonds are not negotiable instruments.* Improvement bonds issued under the Local Improvement act of 1897, to be paid out of the assessment levied for the improvement, are not negotiable, and holders thereof have no greater rights than the contractor to whom they were issued.

2. MANDAMUS—*when mandamus will not lie to compel municipality to pay improvement bonds.* If a special assessment is set aside as invalid because the contractor fraudulently constructed an improvement different from and inferior to the one provided for in the ordinance, holders of the improvement bonds issued to the contractor cannot maintain an action of *mandamus* to compel the municipality to re-construct the improvement and pay the bonds.

APPEAL from the Circuit Court of Cook county; the Hon. L. HONORE, Judge, presiding.

On May 9, 1904, appellants, the Northern Trust Company, Calvin B. Beach, as trustee under the last will and testament of E. Kellogg Beach, deceased, and the First National Bank of Marengo, Illinois, filed their petition in the circuit court of Cook county against the appellees, the village of Wilmette and its officers, for a writ of *mandamus* to compel the municipality, out of its general funds, to re-construct a certain public improvement mentioned in the petition and to pay the improvement bonds held by appellants.

220—27

An ordinance was passed by the village of Wilmette for the improvement, by macadam, of Twelfth street between Center avenue and Chestnut avenue, and Chestnut avenue from Sheridan road west to the village limits. A special assessment for $27,788 was confirmed by the county court, $2124.45 of which was assessed against the village as public benefits and the remainder against private property, payable in ten installments, one for $3488 and nine for $2700 each. The contract was let and estimates issued from time to time by the village authorities as the work progressed. The work was finally accepted and bonds issued in payment thereof, amounting to $23,800. Of these bonds $2900 was subsequently paid, and the balance ($20,900) remained outstanding and unpaid. Of this amount the appellants hold $19,600 and the balance is held by other parties. The bonds were originally issued by the village authorities to the contractor and subsequently assigned to appellants. At the June term, 1901, of the county court of Cook county application was made for judgment and order of sale against the property along the line of the improvement for installments of the assessments which had been returned delinquent. Objections were filed by the property owners on the ground that the improvement made was not the improvement provided for in the ordinance and contract. Upon a hearing the objections were overruled and judgment and order of sale entered against the property. This judgment was subsequently reversed by this court in such a way that the assessments are not collectible.

The ordinance provided that the streets should be graded, curbed, guttered, macadamized and otherwise improved in accordance with plans and specifications therein contained. The specifications stated how the street should be excavated, how it should be rolled, what kind, quantity and quality of material should be used and in what condition it should be left when completed. The streets were not completed in accordance with these requirements, but, on the contrary,

after grading the roadway to the grade line a considerable portion of it was not rolled, tamped or otherwise made suitable, in form or grade, for a macadam pavement. Portions of the road-bed were filled with water and mud, in which wagons hauling material sank to the axles, and in these places the slag was dumped in the mud. After the slag was put on the roadway it was not rolled in some places. Limestone screenings were scattered on it, but not sufficient to fill the interstices. On most of the roadway crushed limestone was put upon the slag but in some places none was used. The top material was called "bank gravel," and was a mixture of loam, clay and gravel, varying from sixty per cent of clay and loam and forty per cent of gravel to twenty-five per cent of clay and loam and seventy-five per cent of gravel. An analysis of a portion of it showed 57.4 per cent of gravel and 42.6 per cent of clay and earthy matter. This top dressing, which was to be of gravel, was of such a nature that it could not be rolled when wet, as required by the ordinance, but would ball up and cover the roller with mud and clay. There was no uniformity in the depth of the materials which entered into the construction, and in many places the total depth was two and one-half to three inches less than required by the ordinance. There is no controversy as to the character of the improvement or the condition of the street after the improvement was completed. It was a mixture of clay, loam, gravel, limestone and slag, which would not sustain an ordinary load in wet weather. Ordinary travel cut it up into deep ruts, and wagons cut down in it so as to bring up the slag from the bottom material. During wet weather the top worked up into slush and loaded teams were mired in the roadway.

On September 4, 1900, as the work was going on, a communication was received by the board of local improvements from certain property owners complaining that the work was not being properly done in accordance with the specifications and contract, and giving instances of departure from the

terms of the ordinance. Thereupon the president of the board examined the work, and certified that so far as accepted it was in substantial compliance with the contract, but that certain portions of it not in accordance with the specifications had not been accepted nor any estimates granted thereon.

All of these facts, together with others not material to be here recited, were set up by appellants in their petition for a *mandamus,* and they claim that they were innocent purchasers of the bonds for value without notice, and sought to compel the municipal authorities to proceed to re-construct the improvement out of the general fund according to the ordinance, so the bonds might be collected. A demurrer was filed to the petition, and upon a hearing it was sustained and the petition dismissed. To reverse this judgment an appeal has been prosecuted to this court.

CUSTER, GRIFFIN & CAMERON, and WOOD & OAKLEY, for appellants:

Upon the making of the assessment it became the duty of the village to require the completion of the improvement in accordance with the ordinance. Local Improvement act of 1897, secs. 75, 80-83, 85; *Fisher* v. *People,* 157 Ill. 85; *People* v. *Whidden,* 191 id. 374.

This was a duty which the property owner could enforce by *mandamus. People* v. *Green,* 158 Ill. 594; *Callister* v. *Kochersperger,* 168 id. 334; *Heinroth* v. *Kochersperger,* 173 id. 205; *Shannon* v. *Hinsdale,* 180 id. 202; *Lawrence* v. *People,* 188 id. 407; *People* v. *Whidden,* 191 id. 374.

The duty of collecting the assessment, which the village owes to the bondholder, includes the duty of seeing that the work is completed and that the improvement which it accepts is not a different one from that required by the ordinance, because otherwise the collection of the assessment is defeated by the act of the village itself. *Gage* v. *People,* 193 Ill. 316; 200 id. 432.

Since its present inability to make the improvement arises not from any defect or insufficiency of the assessment provided for that purpose, but from its own wrong, the village may be compelled by the bondholder, if need be, to resort to its general fund for the means of righting that wrong. *Clayburgh* v. *Chicago,* 25 Ill. 535; *Maher* v. *Chicago,* 38 id. 266; *Chicago* v. *People,* 48 id. 416; *Park Ridge* v. *Robinson,* 198 id. 571; *Reilly* v. *Albany,* 112 N. Y. 30; *Bank* v. *Portland,* 24 'Ore. 188; *Atchison* v. *Brynes,* 22 Kan. 65; *Stephens* v. *Spokane,* 14 Wash. 298.

It is not a valid objection that because of his own participation in the wrong the contractor to whom the bonds were delivered could not enforce them, and that the petitioners, though themselves innocent, have no greater rights than the contractor.

These bonds, even in the most unfavorable view, are so far transferable as to carry to the transferee all the rights of the prior holder as they existed at the time of transfer. The prior holder wholly parts with his right to defeat their payment by any subsequent act of his. · If the bonds, being issued as authorized by the statute, are valid obligations at the time of their transfer to an innocent purchaser, they cannot be defeated by the act of the original holder, nor by the act of the issuing municipality, nor by the concurrent acts of both, committed after such transfer. Daniel on Neg. Inst. sec. 725; Local Improvement act of 1897, sec. 56; *North Bergen* v. *Eager,* 41 N. J. L. 184.

By the acts of its own officers the village is estopped to urge the invalidity of the bonds upon the ground suggested. Bigelow on Estoppel, (4th ed.) 547, 552; *Chicago* v. *Sexton,* 115 Ill. 230. ·

J. L. McKITTRICK, and GEORGE GILLETTE, for appellees:

The holder of non-negotiable paper holds it subject not only to all defenses originally existing against the payee, but as to all defenses arising before notice of transfer. 17 Am.

& Eng. Ency. of Law, 232; *Bank* v. *Hines,* 177 Ill. 417; *Barker* v. *Barth,* 192 id. 460.

Bonds or vouchers issued under the Improvement act of 1897, to anticipate installments of a special assessment, are not negotiable, and a purchaser thereof is vested with no right superior to that of the contractor. *Bank* v. *Petterson,* 200 Ill. 215.

There is the same ruling as regards warrants issued against a special assessment fund. *Morrison* v. *Bank,* 213 Ill. 472.

Without express power a public corporation has no authority to make and place in the market negotiable paper. *Sherlock* v. *Winnetka,* 59 Ill. 390; *Hewitt* v. *School District,* 94 id. 528, and cases cited.

The bonds here in question having been issued under the Local Improvement act of 1897, and on their face being payable out of special assessment, and the contractor or other person holding them having no claim against the municipality issuing them other than the fund arising from the assessment, another insuperable reason is presented why they are not negotiable in the sense that an innocent purchaser is entitled to protection under the law relating to bills and notes. *Morrison* v. *Bank,* 213 Ill. 487; 4 Am. & Eng. Ency. of Law, (2d ed.) 87.

An essential quality of negotiable paper, either under the statute or at common law, is the personal liability of the maker, and there being no personal liability upon the village for the payment of these bonds, their non-negotiable character is conclusively established. *Turner* v. *Railroad Co.* 95 Ill. 134.

A purchaser of municipal bonds is chargeable with knowledge as to whether precedent conditions to the existence of the power to issue them have been complied with. *Williams* v. *Roberts,* 88 Ill. 11, and cases there cited.

Notwithstanding the village had authority to issue bonds in payment of an improvement authorized by the ordinance,

the purchasers were nevertheless bound to know that the particular bonds in question were lawfully issued.   *Hewitt* v. *School District,* 94 Ill. 528.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is claimed by appellants that the bonds in question were negotiable instruments, and that they were purchasers of the same in good faith for value, without notice, before any of the defenses arose; that the bonds thus issued and sold can not be defeated by the subsequent acts of the village or the contractor, or both; that the village is liable to complete the improvement out of its general fund, because its officers were guilty of a flagrant breach of their obligation to the bond-holders; that the village is estopped from claiming that the bonds are invalid, because of the false acts and representations of its officers in issuing the estimates, accepting the work and issuing the bonds.

As we view the case its disposition turns upon the question as to whether or not the bonds were negotiable instruments, so as to vest the holders with rights superior to those of the contractor and which can be enforced against the village. The bonds were issued in payment of a public improvement authorized by statute. The statutory provisions stamp upon this proceeding certain characteristics which must be taken into consideration in the determination of the case.

Section 73 of chapter 24 of the Local Improvement act (Hurd's Stat. 1903, p. 408,) provides that no person or body corporate taking any contract from a city, to be paid out of special tax or special assessment, shall have any claim or lien upon the city in any event, except from the collection of the special assessments or special taxes made for the work contracted for, and in case it appears that such assessment or tax cannot be levied or collected the municipality shall not, nevertheless, be in any way liable to such contractor in

case of failure to collect the same, but shall, so far as it can legally do so, cause a valid assessment to be levied and paid.

Section 86 of the same act (Hurd's Stat. 1903, p. 412,) gives the form of bond to be issued by the city, as follows:

"STATE OF ILLINOIS, ⎰
*County of*............... ⎰ *ss.*

$........  Series No.........                     Bond No........
.............................. of ..........................
Improvement Bond.

"The............of.............in............county, Illinois, for value received, promises to pay to the bearer on the .... day of .........., A. D...., the sum of....dollars, with interest thereon from date hereof, at the rate of five percentum, payable annually on presentation of the coupons hereto annexed.

"Both principal and interest of this bond are payable at the office of the treasurer of said......of............

"This bond is issued to anticipate the collection of a part of the ......installment of special assessment No.... levied for the purpose of............, which said installment bears interest from the .....day of............, A. D...., and this bond and the interest thereon are payable solely out of said installments when collected.

"Dated this....day of.........., A. D....."

It will be observed that this bond is payable to bearer, and the latter part provides that "this bond and the interest thereon are payable solely out of said installments when collected."

Section 90 of the same act (Hurd's Stat. 1903, p. 413,) provides that no person accepting the bonds issued for a local improvement shall have any claim or lien upon the city, in any event, for the payment of such bonds or interest thereon, except from the collection of the assessment against which said bonds are issued, and the municipality shall not, nevertheless, be in any way liable to the holder of said bond in case of failure to collect the same, but it shall do everything required of it in order to collect the assessment which the bond is given to secure.

In the case of *Hewitt* v. *Board of Education of Normal School District,* 94 Ill. 528, we held that municipal corporations, unless authorized by their charters or by statute, have no power to make and place in the market commercial paper,

and all persons dealing in municipal bonds issued by officers of a school district must see that the power to issue them exists; that there is no presumption that such paper has been issued within the scope of their power, as is the case with corporations created for business purposes, and that municipal bonds issued without power are void in whosesoever's hands they may be found. It was evidently the intention of the legislature to make these bonds payable solely out of the assessment, and not to make the municipality liable in any way for the failure to collect the same. The full faith and credit of the city were not given to the bondholders. The city in no way guaranteed their payment. All it was required to do was to exercise the power given it by the statute to see that the proper assessment was made and that such assessment was collected after it was made. In the American and English Encyclopedia of Law (vol. 4, p. 87,) it is held that where instruments are drawn payable out of a particular fund, whether the fund has already accrued or is to accrue in the future, such instruments are not negotiable, since they do not carry the general personal credit of the maker, and since they are contingent upon the sufficiency of the fund out of which they are drawn. In volume 21 of the same work, on page 26, it is held that municipal warrants or orders, though in form negotiable when they are drawn payable to the payee, his order or to bearer, do not possess the incidents and qualities of paper negotiable by the law merchant, so as to preclude the inquiry, where held by a *bona fide* purchaser, as to their legality, and thus shut off defenses available between the original parties, but that such a purchaser stands merely in the shoes of the original payee. On page 54 of the same volume it is held that statutory authority to issue municipal bonds which are to run for a long period of time and bear interest and which are to be put upon the market and sold, impliedly authorize the municipality to make the bonds negotiable in form, this being the usual form of such security.

Where negotiable bonds are expressly authorized, a bond payable to bearer has been sustained as valid, though the statute also requires the bonds to state on their face to whom they were issued. So, also, where negotiable bonds were authorized, the bonds may be made payable to the payee or bearer. But if the municipality had no power to make the bonds negotiable in form, the fact that they are so made will not invalidate the bonds but simply render them non-negotiable. In the case of *National Bank of LaCrosse* v. *Petterson,* 200 Ill. 215, the question of the negotiability of bonds of this character was before this court, and we said: "The improvement was to be paid for by special assessments to be levied in five installments, against the last four of which installments the city issued improvement bonds or vouchers under the provisions of section 86 of chapter 24. These bonds or vouchers were not negotiable, and had no effect to invest the appellant with any right superior to that of the contractor to whom they were issued." In the case of *Morrison* v. *Austin State Bank,* 213 Ill. 472, the same question was before this court, and we there said (p. 487): "There is another insuperable reason why the warrants here in question cannot be deemed or held to be commercial paper. They were given for work done under the Local Improvement act of 1897 and payable out of special assessments, and so state upon their face. By sections 73 and 90 of that act the contractor or other person holding such warrants has no claim against the municipality issuing them, other than the fund arising from the assessments that may be collected. Instruments drawn upon a particular fund, whether the fund has already accrued or is to accrue in the future, are not negotiable bills or notes, since they do not carry the general personal credit of the maker and since they are contingent upon the sufficiency of the fund upon which they are drawn."

Under these many authorities it is no longer an open question in this State as to whether or not these bonds are negotiable. As the bonds were not negotiable, their holders

occupied the same position as did the contractor to whom they were issued.  The appellants' rights are no higher or greater than the contractor's, and any defense which was good as to him is also good as to them.  If his actions foreclosed him from pursuing a certain remedy they also foreclosed them. (*Union Nat. Bank* v. *Hines,* 177 Ill. 417; *Barker* v. *Barth,* 192 id. 460.)  The ordinance passed by the city authorized a public improvement of a certain kind.  The contract for this improvement was let by the board of local improvements, and it appears that the contractor did not perform the work according to the ordinance but made an entirely different improvement.  The bonds were issued in payment of this work.  The work was not done according to contract by reason of the fraud or wrong of the contractor.  He being at fault, it certainly would not be claimed that he could maintain a writ of *mandamus* to compel the village, at its own expense, to remedy something for which he was directly responsible.  If he should seek to do such a thing he would be immediately confronted with the fact that he was trying to take advantage of his own wrong.  Under the authorities above cited the purchasers of these bonds, which were originally issued to the contractor, now occupy the same position which he occupied.  The bonds were not negotiable.  This fact was known to the purchasers.  They cannot enforce any other or additional right than could the contractor.  They are therefore liable for his fraud or wrong in failing to put in the improvement which the ordinance specified.  Under this state of facts they had no right to a writ of *mandamus,* and the court committed no error in so holding.

The judgment will therefore be affirmed.

*Judgment affirmed.*