JOSEPH FINEGAN & CO., APPELLANTS, vs. L'ENGLE & SON, APPELLEES.

1. In the construction of road-beds for a railway, a substantial *bona fide* compliance with the terms of the contract in the execution of the work should be insisted on, and it is no excuse that a portion of it may be executed at a trifling expense—at the cost of a few dollars. Completion is the word, as near as may be, and the engineer is inexcusable in allowing a mere formal completion with the contract.

2. A party is not entitled to compensation where his work is completed by another, he having abandoned and left it unexecuted.

3. By the terms of this contract, the work was to be done to the satisfaction of an engineer of the road. This is an appropriate engagement and will be enforced and carried into execution by the Court, and whilst his certificate will not be regarded as conclusive and unassailable, yet it will be without fraud or special showing to avoid its effect.

4. Courts of Equity will give relief in such cases as a general rule, nor are Courts of Law impotent to give it in a proper case.

5. A plea in abatement, that by the agreement the Chief Engineer should in all cases decide every question which might or could arise under the contract, is not maintainable. If pleadable, it should be in bar.

This case was decided at Jacksonville.
Appeal from Duval Circuit Court.

The opinion of the Court contains a statement of the facts in the case, to which reference is made.

*G. W. Call* for appellants.

*Burritt* and *Forward* for appellees.

BALTZELL, C. J., delivered the opinion of the Court.

L'Engle & Son, plaintiffs in the Court below, contracted with the defendants Finegan & Co. to "execute all the gradation on that part of the Florida Railroad included between sections 1,240 and 1,268, comprising ten miles, more or less, and to furnish all the sills and cross-ties required for the same, together with all hewed timber necessary for the construction of drains or trestles on said portion of said road." After providing for the mode of execution of the work by special articles, not necessary to be particularly noticed here, it was further agreed that "the work should be justly estimated, received and paid for, by the terms of the contract, after the completion of each consecutive section of five miles, and at the end of thirty days from the commencement of the work, the parties of the second part should cause a proper estimate of the work done to be made, and pay to the parties of the first part seventy-five per cent. of the amount due for said work in cash, reserving twenty-five per cent. of said amount until the completion of the section of five miles, which reserved twenty-five per cent. should be then paid," &c.

Plaintiffs complain, alleging "performance of the first five miles to the satisfaction of the Engineer and of defendants, and of the failure to pay agreeably to the contract made; of the not making further estimates nor pay for extra work, by reason of which they were unable to go on with their work and were compelled to abandon it."

Defendants take issue on these allegations and insist,

that "the plaintiffs did not perform the work on the first section of five miles to the satisfaction of the Engineer of the road and of defendants;" "that they abandoned the contract and wholly refused to perform a large part of the work stipulated in said contract;" "that they were not compelled, from non-performance of said agreement by defendants, to abandon their work;" "that defendants had fully performed all things stipulated to be performed by them when plaintiffs abandoned their work;" "that plaintiffs wholly failed and refused to perform said work according to the direction of the Chief Engineer, as by the contract it was stipulated it should be performed."

These issues were submitted to the jury, with instructions. Upon them the jury found a verdict for the plaintiffs. Upon which defendants moved for a new trial, which the Court refusing to grant, they excepted, so as to present the facts and bring this question before this Court for its consideration.

Whether this motion should have been granted can alone be determined by the testimony—by an ascertainment of the facts bearing upon the contract between the parties. It is satisfactorily shown that estimates were made, at the expiration of thirty days, by the Engineers, for work performed for the months of September, October, November, December, January, February, March, April and May, up to the time of abandonment, and that payments were made in full compliance therewith to the amount of $12,821 62.

Mr. Butler, the Engineer in charge of the road, deposes, "that a final estimate was demanded of the five miles and refused by the Engineer, for objections stated to plaintiffs, that the work was not right. He supposed that L'Engle could see it as well as witness could, who said he would go

21

and do it. He does not think plaintiffs ever notified him that it had been done. The road was not trimmed according to the road pegs; the embankment was not up to grade in some places, it was over grade in other places. There were stumps that should have been taken out, and in some places there were ditches to be opened," &c. The entire statement of witness need not here be repeated, as this will give an idea of its contents.

This testimony of the Engineer in charge of the work disproves the allegations in the declaration as to the " performance on the first section of five miles to the satisfaction of the Engineer of the road and defendants " and the other allegations as to the making of estimates, and should be regarded as conclusive on the point, uncontradicted as it is by other testimony, and, more than all, having the weight due to it by the official position of the witness, especially accredited by the written agreement of the parties.

That we are not mistaken as to the other testimony in the case, we extract such portion of it as is applicable. Mr. Gregg, a Civil Engineer, engaged on an adjoining road, a witness for the plaintiff, says: " He went over all the road, except at station 1,304 and a quarter of a mile towards that station and speaks favorably of it." The work, as far as he saw, was done as well as the work on his road. There was nothing wrong that witness could detect. He said, at the time, he wished the work on his own road was as good. He yet states that he went over the work *without any instrument.* It was entirely out of his power to form any opinion by the examination he made as to how the grubbing and clearing was done. When an embankment is once built, no man can tell how the grubbing was done and before the embankment was put upon it. *The Engineer who superintended the construction of a*

*road-bed is the best evidence* of how it was grubbed. Witness would rely upon his testimony in preference to his own examination *after the embankment was made.* Witness cannot say whether all the ditches for draining the road-bed on the first five miles were built; he could see no omission. The turn-out and the Y track at Baldwin were not complete. The ditches are not such as the road requires at that place. Witness thinks they were staked, but not finished. Baldwin is on the first five miles. He did not measure the clearing, but thinks it was sixty feet wide. Witness cannot tell from his own examination whether all the logs, brush-wood and other perishable matter had been removed beyond the place occupied by the embankment, nor can he tell whether, under an embankment ten feet high or less, all the trees and stumps were grubbed, nor whether they were cut to the surface of the earth under an embankment over ten feet high." This is not the entire testimony of this witness, but will give a correct idea of its character and bearing.

Alfred A. Sears, another Engineer, examined for plaintiffs, says he was charged with laying the superstructure of the road, and saw no difference between the work done by plaintiffs and the balance of the road; noticed nothing peculiar in the road-bed. It was fit to receive the track as much as any part of the road. There was some trifling amount of grading to be done at the Northern end. There was a gap in the road there. Could not have been over two or three hundred cubic yards of work altogether that was necessary to put on. It made no difference, except the two or three hundred yards of extra work.

This is substantially the testimony of these witnesses, and sustains the Engineer in his testimony as to the non-performance of the work and the omission to complete it agreeably to the contract of the parties. In argument, it

was urged that the work left unperformed was of little value, only a slight jog of a few hundred feet—a few stumps, extricable at an expense of a few dollars, to be disregarded as worthy of no consideration. We do not think so. Completion is the word, as near as may be, in works of this kind, without defects and with everything done to perform the contract, so that there may be a substantial *bona fide* compliance. If there is little to be done, there is less excuse for the not doing this little. One stump unremoved constitutes an obstruction—two hundred yards ungraded are equally required to be brought to the requisite level, and an Engineer would be highly culpable in disregarding such defects. This would be defeating the very object of his appointment, which is to secure a compliance with the contract in every essential respect. We have referred to this part of the testimony, not from any disposition to go outside of the proof given by the Engineer, but as sustaining it in all material points. Other testimony is clearly not entitled to the same verity—by the contract, by the parties' own agreement, it is not so entitled. The witnesses themselves take the correct view of the subject. They examined the work after it was done, but without instruments. The duty of the Engineer is to superintend and be present at its execution, and to apply to it the test of science and skill with the appropriate instruments. This is the best evidence, in our estimation. Whilst, then, satisfied upon this point, it remains to enquire into the other allegations, "that defendants would not pay the sum of $776 18, due on an estimate for grading made in May, 1857, $600 for sills and cross-ties and $158, an additional sum for sills, nor pay for the works, nor cause monthly estimates of the work to be done, nor pay 75 per cent. of the amount due for the work, by reason of which plaintiffs were so obstructed in its perform-

ance as to be pecuniarily unable to go on with the work and obliged to abandon it." We are at a loss for the evidence to sustain these allegations. There is no proof as to the extra work—none to show a refusal of monthly estimates. We have already seen defendants were not entitled to an estimate for the five miles, and, in reference to the pay, there is proof of sums received amounting in the aggregate to $12,821 62, whilst the estimates of the Engineer amount only to $12,348 34, showing an over payment of $473 28. A statement to this effect, giving the various items, was read in argument to the Court by counsel for the defendant, and not contradicted.

A letter was read in evidence from plaintiffs to defendants, insisting upon the allegations above noticed and setting up an additional ground in an alleged declaration, made by one of the defendants, that " they would pay no more money until the completion of the contract and would not pay the bonds due on the first section of five miles when it should be received by the Engineer," accompanied panied with an offer by plaintiff to resume work on receiving the $776 and to complete the contract. We regard the letter as improperly read to the jury; but, overlooking this and admitting its statements, we give but little value to its contents. Plaintiffs were in no need of additional assurance to their contract. They had the written agreement of all the defendants, engaging to pay on the performance of the work. What could the oral declarations of one of them amount to, that they would not pay? Obviously nothing.

In reference to the entire case on the part of the plaintiffs, there is a most glaring inconsistency. They allege that they were prevented from the completion of their work by the act of defendants and compelled to abandon it; yet evidence is produced and an effort made to show a substantial performance, which is insisted upon before the

jury, and compensation claimed, as if the entire work had been performed. Not a little singular, too, by their own proof, only 2,700 cubic yards remained to the completion of the entire work, which, by their testimony, could have been executed in a few days with the hands they had in their employment—" in a couple of days, if there were no waters and the materials on the sides were found favorable." It may be true that this may have been the hardest and most difficult part of the work, yet this by no means adds to the strength of their case on its merits. Whether we regard the case, then, upon the testimony of the Engineer or the other witnesses, the performance by the plaintiffs of their contract is not only not made out, but absolutely disproved. No satisfaction of the Engineer or of defendants with the work done on the first section of five miles, but, on the contrary, express dissent, disapproval and dissatisfaction made known to the plaintiffs, and an engagement on their part to remove it. No refusal to pay agreeably to estimates to excuse an abandonment of the work, but over-payment beyond the estimates. No obstruction nor prevention of the work by defendants, but rather aid and assistance from them in lightening the labor of plaintiffs and helping the performance. So far from just cause for abandonment of the work, there was every motive and inducement for renewed exertion, activity and diligence to complete it. It was on the very eve of accomplishment—a consummation required by the magnitude and importance of the undertaking, the true interests of all concerned and the just expectations of the public. Plaintiffs' hands were all on the spot and could have done it more easily, with greater despatch, with less expense and trouble than any others. It could have been done in a period scarcely worthy of computation or estimate, and yet, without even a plausible excuse—with no cause what-

Finegan & Co. vs. L'Engle & Son.—Opinion of Court.

ever—it is abandoned and deserted.   We may lament and deplore the consequences resulting from this rash act—it is beyond our power to relieve from its legal effects.   Duty, stern and imperious, compels us to declare our convictions that their case was not made out, and that the verdict of the jury is not sustained by the evidence.   A new trial should have been granted by the Court below, and in this refusal we think there was error.

With the view taken of the case, it is unnecessary to consider all the errors assigned.   The third instruction to the jury is perhaps the only one requiring a notice from us.   It asserts, that "if the jury find from the evidence that the work done and materials furnished by the plaintiffs were so done and furnished by the consent, expressed or implied, of the defendants, as if the defendants have accepted and retained the work and materials and derived benefit from them, then the plaintiffs are entitled to recover in a *quantum meruit* the balance of the work and materials."   This is so directly opposed to the view we have already taken of the evidence in the case that it would scarcely require comment, but for the appearance of right in presenting the defendants as having accepted the work and derived benefit from it.   This would *prima facie* entitle the plaintiffs to recompense; but, when connected with the fact that they had agreed to do the work, for which they were to be paid after estimates by an Engineer; that they had received pay for all the estimates made, but had, without cause, abandoned the work and refused to perform service further, thus throwing its execution upon the defendants; that this was the bed for a railroad, demanding instant despatch and not admitting of delay, and that an absolute necessity existed for the use and appropriation of their work, as in no otherwise could the road be made, the case is essentially altered.   Not en-

titled by their own act, through deficiencies in their work, to compensation, by what rule or principle are they entitled to it when others perform the work? A rule fraught with consequences so pernicious can scarcely receive the sanction of the Court. The work on the road may differ from that of the cross-ties, not estimated because at too great distance from the road or other cause, and which were appropriated by defendants, if there be such, very clearly for them a compensation should be awarded.

A plea in abatement was filed by defendants, that "the Court should not take further cognizance of the action, because they say that the cause of action in the declaration originated under a written contract, wherein and whereby it is expressly agreed and understood between the parties that the Chief Engineer of the Florida Railroad Company should in all cases decide every question which might or could arise under the said contract, and his decision should be final and conclusive," &c. The Court held this plea to be bad, and, we think, rightly. If available to the defendants to the extent contended for, it would be in bar, showing that there was no cause of action. This is technically a plea to the jurisdiction of the Court. In such a plea "defendants must show that another Court has exclusive jurisdiction of the cause of action."—Archb. Pl., &c., 280. "Whenever the subject matter of the plea or defence is that the plaintiff cannot maintain any action at any time in respect to the supposed cause of action, it may and usually should be pleaded in bar; but matter which merely defeats the present proceeding, and does not show that the plaintiff is forever concluded, should in general be pleaded in abatement."—1 Chitty Pl., 434. The effect of such an agreement has been discussed in the English Courts, where a difference as to its legal effect seems to prevail. It is, perhaps, not important on this occasion finally to deter-

mine the matter. Undoubtedly, like other parts of a con-
tract, this should be faithfully observed, carried out and
executed. In this case, reference should have been made
to the Chief Engineer to arrange the difficulty. A provis-
ion of the kind exists, and is becoming common in near-
ly all government contracts, in nearly all public works and
private ones of large extent. Indeed, it would seem indis-
pensable to their proper and right execution. To say that
the provision is useless and of no avail, and that either
party may disregard it and apply to the Courts for any in-
jury, would be doing great violence and wrong to a solemn
agreement of the parties and to great public interests.
Nor will it be proper to say, that in no case is either party
entitled to redress from the Courts. For the present, we
content ourselves with deciding that the present suit may
not be maintained, except as hereinafter stated, and by re-
ferring to the adjudications on the subject, leaving future
cases to be determined as the nature of the case may re-
quire.

" Where the contract contains provisions referring the
estimate of the quantity and quality of the work abso-
lutely to the determination of the Company's Engineer, or
any particular party, and provides that his decision shall
be final, no relief from his decision can ordinarily be ob-
tained even in a Court of Equity, unless upon the ground
of partiality or obvious mistake."—Redfield on Railways,
207.

" When, by the terms of a railway construction contract,
executed under the seals of the parties, the work is to be
paid for from time to time, upon the estimate and appro-
val of the Company's principal Engineer, and the amount
and quality of the work finally to be determined in the
same way, no action at law or in equity can be maintained

until such estimate and approval is obtained, unless it is prevented by the fault of the Company. But, when no such Engineer is furnished by the Company, or when, through their connivance, he neglects to act, the contractor is not without remedy in equity."—Redfield, 221.

The case of Herrick vs. Vermont Central Railroad Company is in confirmation of this view. It is there held that "a stipulation that the Engineer shall be sole judge of the quantity and quality of the work, and from his decision there shall be no appeal, is binding upon the parties and constitutes the Engineer an umpire or arbitrator between them."

"Such a stipulation imposes upon the party by whom the Engineers are to be employed the duty of employing competent, upright and trust-worthy persons," &c.

"If payment for the work performed is dependent upon and to be made according to the Engineer's estimate as to its amount, and the employing party performs his duty in reference to the employment of suitable Engineers, &c., the obligation to pay will not arise until such estimates are made." "But if no estimates are made, then the neglect or fault of the Engineer, or of the party who employs him, the other party probably could recover at law for the work performed by him without any Engineer's estimates for it."

"A Court of Equity has jurisdiction of a claim to be paid for a larger amount of work done under such a contract than was estimated by the Engineer, where the underestimate was occasioned either by mistake or fraud."—27 Vermont Reports, 673.

The learned author just quoted, alluding to difference of opinion in the House of Lords as to a covenant of this kind, makes these sensible remarks:

"A stipulation that the liability under a contract shall

not accrue except upon the basis of certain previously ascertained facts, is no more than a limitation upon the right of action, as that no action shall be brought until after one year, or unless commenced within five months, which have been held valid. Hence a contract to purchase goods, at the valuation of N and M cannot be made the foundation of an action without obtaining the valuation stipulated or showing that the other party hindered it; and, in some cases, it is held, that if the estimate is withheld or defeated by the fraud of the other party, no action at law will lie—the only remedy by special action on the fraud or in equity, perhaps. We therefore feel compelled to adopt the view, that upon principle, on fair balance of authority, such a stipulation in regard to estimating labor or damages under a contract for construction is valid and may be treated as a condition precedent, but beyond that the present inclination of the English Courts is to hold it repugnant to policy," &c.

"But the balance of authority in this country seems to be in favor of allowing such a condition precedent in this class of contracts to extend to the quality of the work as well as the quantity, and to the question whether the work is proceeding with sufficient rapidity, and whether the Company, on that account, are justified in putting an end to the contract."—Redfield, 224.

We hold, then, as well by the general principles of law as those applicable to this particular class of cases, that the plaintiff has not shown a right to recover; that he has not performed his contract and has not shown such prevention or obstruction by defendants as to entitle the Court to treat it as performed.

The judgment of the Circuit Court will be therefore reversed and set aside, and the case be remanded for a new trial and further proceedings to be had not inconsistent with this opinion.