DUVAL COUNTY, a political subdivision of the State of Florida, *Appellant,* v. CHARLESTON ENGINEERING and CONTRACTING COMPANY, a corporation, *Appellee.*

Division B.

Opinion filed April 28, 1931.

Petition for rehearing denied May 25, 1931.

342

344

*John E. Mathews,* of Jacksonville, for Appellant;

*Baker, Baker & Rutherford,* of Jacksonville, for Appellee.

DAVIS, J.—As stated in the brief of the appellant there is involved in this case the law relating to public contracts, arbitration and award, the binding force and effect of the final certificate or award of an engineer, and what state of facts will authorize a Chancellor to set aside an award, and whether or not a Chancellor can substitute his judgment upon the facts for the judgment of the engineer or arbitrator.

Duval County, the appellant, advertised for bids for the construction of approaches to McGirts Creek Bridge in Duval County. In due course bids were received, an award made, and a contract entered into with the appellee, Charleston Engineering and Contracting Company. Certain plans and specifications were made a part of the contract.

Provisions of the contract most pertinent to the decision of this case are as follows:

"25. Engineer as Referee: To prevent disputes and litigations, it is agreed by the parties hereto, that the Bridge Engineer shall decide all questions, difficulties, and disputes of whatever nature, which may arise relative to the interpretation of the plans, construction, prosecution and fulfillment of this contract, and as to the character, quality, amount, and value of any work done and materials furnished under or by reason of this contract, and his decisions upon all claims, ques-

tions, and disputes shall be final and conclusive upon the parties thereto.

34. Measurements of Quantities: All work completed under this contract shall be measured by the Engineer according to United States Standard Measures. All measurements shall be taken horizontal or vertical, except for paving surfaces, which will be taken along the actual surface of the pavement. No allowance shall be made for surfaces laid over a greater area than shown on the plans, except where such work is done upon written instructions of the Engineer.

37. Final Payment: Whenever the improvement provided for under this contract shall have been completely performed on the part of the contractor, and all parts of the work have been approved by the Engineer, according to the contract, a final estimate showing the value of the work will be prepared by the Engineer as soon as the necessary measurements and computations can be made, all prior certificates or estimates upon which payments have been made being approximate only and subject to correction in the final payment. The amount of this estimate, less any sums that may have been deducted or retained under the provisions of this contract, will be paid to the contractor within thirty (30) days after the final estimate has been approved by the Engineer, provided that the contractor has properly maintained the project as hereinafter specified, and provided he has furnished to the County a sworn affidavit to the effect that all bills are paid and no suits are pending in connection with the work done under this contract.''

The contractor completed the work and a dispute arose between the County and the contractor as to whether or not approximately eighteen thousand dollars should be withheld from the contractor by reason of damage to certain piers caused by the operations of the dredging con-

tractor. Another dispute grew out of claims made in that connection by another contractor who had the contract for the construction of the bridge proper. There were still other disputes between the county and the contractor as to the amount of earth which had been placed in the fill on the Jacksonville end, the amount of concrete piling, and also as to the liquidated damages due to delay in completion of the work, as provided for in the contract.

The county contended that the figures claimed by the contractor were too high, and that the figures should be approximately those set forth as estimates of the work to be done as set forth in the notice to bidders.

A final estimate under paragraph 37 of the contract (which has been heretofore quoted) was prepared and filed by the engineer who allowed the contractor a balance of $1063.96 on the two contracts. The contractor refused to accept the final estimate and returned to the county authorities a draft which had been tendered in payment.

Thereupon the contractor brought its Bill in Chancery for an accounting of the amounts actually due the contractor and to have the "Final Estimate" set aside on the ground that it was not a true and correct estimate of the work done in certain particulars therein specified, and on the ground that the final estimate was in the particulars mentioned, so grossly erroneous and contained such glaring mistakes, as to imply bad faith on the part of the County Bridge Engineer or at least a failure on his part to exercise an honest judgment and if allowed to stand would amount to a fraud on the complainant.

An answer was filed by the County, in which answer was incorporated a demurrer to the bill on the grounds, principally, that the bill of complaint showed a certificate

or final estimate of the Engineer which under the contract was binding upon the parties and could not under the law governing such matters, be impeached or set aside under the facts alleged in the bill of complaint.

The answer also denied all material allegations of the bill of complaint, but admitted that the Engineer had not made his measurements of the total yardage excavated for the earth embankments as required by the contract, but alleged as an excuse for this failure to do so, the loss of certain of his notes or memoranda which had been made with reference to the Jacksonville approach and asserted that the contractor was responsible for such loss. The answer also attempted to justify the deduction of the alleged cost of the repair of the bridge piers solely on the ground that the bridge and its piers were properly in the "line of work" and were damaged during dredging operations, which under the contract, would be a liability of the contractor who had agreed to be responsible for the preservation from danger of all property along the "line of work."

Voluminous testimony was taken on the merits and upon final hearing the Chancellor over-ruled the demurrer to the bill and found for the contractor on all points, except as to the allowance of payment for additional piling, claim for which was waived by the contractor before signing of the final decree.

This final decree found that "because of the gross errors as aforesaid appearing in the final estimate of the Engineer it should be vacated and set aside and held of no binding force upon either of the parties thereto." Accordingly the court proceeded to examine the accounts of the parties and entered its own judgment and determination that the balance due by the County to the con-

tractor was $44,708.71, instead of $1063.96 which had been tendered by the County. Included in the total of $44,-708.71 was an item of $8,062.22 interest from January 1, 1927, to date of decree, which item of interest was based on the principal sum of $36,646.49 found by the Court to have been the amount which the County should have paid the contractor.

Upon appeal from the final decree the appellant urges primarily three points (1) that the Court committed error in holding, finding or decreeing that it could set aside the final estimate of the Engineer, and substitute its own judgment and opinion for that of the Engineer because of alleged gross mistake or gross error, unless such gross mistake or gross error was made to appear to the satisfaction of the engineer himself; (2) that the court erred in its finding on the evidence submitted, assuming that the first point is not well taken, and (3) that in any event it was unlawful under the facts of this case and the law applicable thereto, to allow the recovery of interest on the amount found to be due under the accounting.

As to the first proposition, it is necessary to consider the effect of an agreement by the parties to a construction contract by which agreement the parties contract for the settlement of disputes by a mutual agent, such as an engineer or architect, such as is provided for by the contract involved here.

At the outset it may be well also to call attention to the difference which exists between a provision in a contract by which the parties agree for the engineer to act as a referee for the settlement of disputes, and a provision in such a contract for the payment for work done to be paid on the final settlement of accounts, on the basis of an engineer's certificate such as is commonly called an "estimate" or "final estimate."

Most construction contracts provide, as do the contracts here considered, that final payment of the amounts due under the contract, are to be made only on a "final estimate" supplied by an Engineer who, under the terms of the contract, is appointed for the purpose of keeping an account of the work done and of the contingencies accruing, which may affect the right to compensation, so that the contractor will only be paid in strict accord with the measure of his performance.

But provisions for a "final estimate" as a basis for payment, and provisions for settling disputes which may arise in the event the contractor refuses to accept as correct the "final estimate," are not to be confused. The latter provision rests upon the commonly accepted doctrine applicable to construction contracts that the parties to such contracts have the right to agree on a means of having *facts* in dispute determined by an agent of both parties as a condition precedent to litigation. Hamilton v. Liverpool, London and Globe Ins. Co., 136 U. S. 242, 34 L. Ed. 419; National Contracting Co. v. Power Co., 170 N. Y. 439, 63 N. E. 450; Thompson v. St. Charles County, 227 Mo. 220; 126 S. W. 1044; Hanly vs. Walker, 45 N. W. 57, 8 L.R.A. 207.

But it is generally recognized that while the parties to a contract have the right to agree on a method of arbitration for the settling of disputes of fact which may arise in the course of the performance of a contract, a provision in a contract that *all* disputes as to liability and loss which arise in the performance of such contracts shall be arbitrated, is void as an executory covenant as far as it attempts to oust the courts of jurisdiction and will neither be enforced or recognized in equity nor allowed to be pleaded at law as a bar. Williams v. Branning Mfg. Co.,

154 N. C. 205, 47 L.R.A. (N.S.) 337, 70 S.E. 290; Page on Contracts (2nd Ed.), Vol. 2, Section 721. See 11 Harvard Law Review 234.

It is also generally held that construction contracts cannot leave the arbitrary or fraudulent decision of an architect or engineer or the like to operate as a conclusive settlement of matters in controversy. Finegan v. L'Engle, 8 Fla. 413; Meacham v. Jamestown, F. & C. Ry. Co., 211 N. Y. 346, 105 N. E. 653; Huber v. St. Joseph's Hospital, 11 Ida. 631, 83 Pac. 768; Nelson Bennett Co. v. Twin Falls Land & Water Co., 14 Ida. 5, 93 Pac. 789; Aetna Indemnity Co. v. Waters, 110 Md. 673, 73 Atl. 712.

And it is likewise the rule that an ambiguous clause in a construction contract will be construed so as not to confer upon an engineer or architect power to decide legal questions arising out of the contract or its performance. Scott vs. Parkview Realty & Imp. Co., 241 Mo. 112, 145 S.W. 48.

In Florida it has been held that a term in a construction contract by which the work was to be done to the satisfaction of an engineer of a railroad, was an appropiate engagement and will be enforced and carried into execution by the court, and whilst the engineer's certificate will not be regarded as conclusive and unassailable, yet it will be without fraud or special showing. Finegan and Company v. L'Engle and Son, 8 Fla. 413. In that case this court quoting from the holdings in other jurisdictions said:

"Where the contract contains provisions referring the estimate of the quantity and quality of the work absolutely to the determination of the Company's Engineer, or any particular party, and provides that his decision shall be final, no relief from his decision can

ordinarily be obtained even in a court of equity, unless upon the ground of partiality or obvious mistake. * * * A stipulation that the engineer should be the sole judge of the quantity and quality of the work, and from his decision there shall be no appeal, is binding upon the parties and constitutes the Engineer an umpire or arbitrator between them. Such a stipulation imposes upon the party by whom the Engineers are to be employed the duty of employing competent, upright and trustworthy persons. If payment for the work performed is dependent upon and to be made according to the engineer's estimate as to its amount, and the employing party performs his duty in reference to the employment of suitable engineers, the obligation to pay will not arise until such estimates are made. But if no estimates are made, through the neglect or default of the engineer, or of the party who employs him, the other party probably could recover at law for the work performed by him without any engineer's estimates for it. A court of equity has jurisdiction of a claim to be paid for a larger amount of work done under such a contract than was estimated by the Engineer, where the underestimate was occasioned either by mistake or fraud, * * * (the) authority in this country seems to be in favor of allowing such a condition precedent in this class of contracts to extend to the quality of the work as well as the quantity, and to the question whether the work is proceeding with sufficient rapidity, and whether the Company, on that account, are justified in putting an end to the contract.''

To the same effect are the cases of Southern Home Ins. Co. v. Faulkner, 57 Fla. 194, 49 So. 542; Hanover Fire Ins. Co. v. B. C. Lewis & Sons, 28 Fla. 209, 10 So. 297, which uphold the same general principles.

But there is a difference between a covenant of reference and arbitration which when executory will not be

enforced or allowed as a bar because it undertakes to contract in advance for arbitration of the entire subject matter, and such a covenant after it is executed.

Where a person enters into such a covenant and actually executes it by submitting an existing controversy to arbitration under it and an award is actually made pursuant to the submission which has in fact occurred by voluntary act of the parties, then the award made under such circumstances is entitled "to that respect which is due to the judgment of a court of last resort" as was said by this Court in Florida Yacht Club v. Renfroe, 67 Fla. 162, 64 So. 742.

An arbitration must not only be contracted for but it must be submitted to, before it can have the force and effect of an award. Without submission after the controversy has arisen, the covenant to refer such controversy to the decision of an engineer as referee is entirely executory. One of the parties after having agreed to submit disputes under the contract to the decision of the engineer as referee may breach his covenant by refusing to do so, but even in this instance, where no submission actually takes place, and the matters in controversy are not referred to the engineer in his capacity as an arbiter, a binding award that would be entitled to the respect which is due to the judgment of a court of last resort, cannot be legally made by such engineer.

Under a contract like the one here involved, the engineer acts as referee only when disputes are referred to him for settlement in that capacity. As was said in Finnegan vs. L'Engle, 8 Fla. text 423, in order to amount to an arbitration under a contractual provision contemplating that means of settling disputes "in this case reference should have been made to the Chief Engineer to arrange the difficulty."

But it by no means follows that breach of an agreement to submit to arbitration, or to abide by the findings of an engineer with reference to certain facts, is without remedy. On the contrary, the unjustified refusal of parties to arbitrate matters which they have validly contracted to arbitrate, or to procure a certain form of evidence, such as an engineer's "final estimate" in writing, which they have validly required shall be obtained before payment, may operate as a bar to obtaining recovery or suing in the courts with reference to those things which are within the scope of the agreement to arbitrate, or the requirement of certificate of an engineer.

And whatever may be the force and effect of a clause like that embraced in paragraph 25 of the instant contract entitled "Engineer as Referee", which provides that matters in dispute shall be referred to the Engineer as Referee to "decide all questions, difficulties and disputes of whatever nature which may arise, etc." it is well established that such a provision may be waived in whole or in part.

Such a covenant is regarded as for the protection of the one who employs the contractor to perform work, and who designates the engineer who is to act under the contract of employment, and it is clear that such provision can be waived by failure to insist on it and taking a position which implies the contrary. Hunn vs. Penn. Institution for the Blind, 70. Atl. 812, 18 LRA (NS) 1248.

In this state it has been held that where a fire insurance contract requires proofs of loss to be made out and submitted as a condition precedent to paying a loss, that the insurance company by unconditionally denying any liability on its policy, waives proofs of loss provided for in the policy. Indian River State Bank vs. Hartford Fire Ins. Co. 46 Fla. 283, 35 So. 228. It is no different in principle

for us to hold with reference to a contract of this kind, that where the agreement provides for reference of certain matters "in dispute" to an engineer as a referee, that the right to insist on such reference will be deemed to have been waived where it appears that the county asserts the unconditional denial of any liability under its contract except to the extent allowed for in the final estimate, which is the very thing which gives rise to such "dispute."

The evidence in the record shows that such was the position taken by the County authorities in the case at bar. It also shows that the attitude of the county engineer was one of strict partisanship in support of the county's denial of any liability except according to the original tenor of the "final estimate." The County did not demand a further reference of the matter to the engineer "as a referee," nor was the matter voluntarily submitted after the dispute arose to the engineer as a referee to settle it in accordance with the terms of the contract. Mere demands on the part of the contractor that the engineer perform his duty and furnish a final estimate cannot be regarded as such submission, because in furnishing a certificate showing his "final estimate" the engineer was not acting as a referee to settle disputes in accordance with a separate clause of the contract.

Whatever dispute has arisen, is the result of the "final estimate" which the engineer did furnish, and while such final estimate, in so far as it is within the terms of the contract calling on the engineer to make *computations* of work done under the contract, may be conclusive evidence of the correctness of the items of work shown, in the absence of a reformation thereof based upon appropriate allegations and proof, it can by no means be held

to constitute an adjustment of a dispute in the manner and method contemplated by the provision of the contract which contemplates the assumption by the engineer of the character of referee.

Furthermore, so long as the provision of the contract referring to the engineer as a referee is executory, such provision must be read and construed in the light of the holdings of the courts to which we have heretofore adverted. Such holdings are that while the parties may make binding and enforceable agreement for the settlement of disputes of facts which may arise in the course of performance, provisions in a contract to the effect that *legal* disputes and the question of *legal* liability and loss shall be so decided, will not be enforced, but if acted on, will of course be recognized as arbitration awards after they are submitted and made with the concurrence of the parties.

So, in this case, as we read the record here, there was in contemplation of law no such award embraced in the certificate of the engineer which is relied on, as would have the conclusive nature and effect contended for by the appellant and the Chancellor was correct in overruling the demurrer to the bill and in entering his decree that there should be an accounting and determination of the liability between the parties, independent of the decision of the engineer as represented by his "final estimate" or certificate relied on.

However, it was error for the court on such accounting to refuse to give effect to or disregard the final estimate of the Engineer, showing the value of the work done based on such engineer's necessary *measurements and computations*. No fraud or bad faith on the part of the Engineer is alleged in the Bill of Complaint nor was it

undertaken to be shown that the County had failed to select an engineer who was competent.

The Contractor having agreed to be bound by the measurements and computations of the engineer as to the work done, this computation of such engineer becomes a condition precedent to the right of recovery. The measurement and computation of the Engineer under the contract and agreement of the parties furnishes the sole and exclusive basis for the amount of payment to be made, and only where there is a complete refusal of the Engineer to make any estimate or computation, is the contractor excused from being compelled to rely on such estimate as a basis for recovery in any suit, at law or in equity.

Such an engineer's estimate is not an arbitration award (2 Elliott on Contracts Section 1602) but a *computation or measurement* of work done based upon the actual knowledge and approved experience of a competent expert engineer selected for that very purpose.

Such certificate involves no dispute and adjudicates no controversy. It is a simple statement of evidence in written form which in the absence of fraud or mistake is conclusive between the parties. It is a part of the terms of the contract, not a part of its performance, altho it measures the result of performance.

In a construction contract like this the parties may be said to agree to pay for certain work. But the work is to be paid for only according to certain *written evidence* of what is done. This evidence constitutes a record of the facts, if, as, and when they develop. The intention of the contractor is to do the work and the intention of the County is to pay for it. But then the intention also is to have a contemporaneous record kept of the work done and to have a final certificate based on such record ultimately made out, as a basis for final payment.

If an engineer's certificate is made out, by inadvertence or otherwise, so as to make it not express the real agreement and intention of the parties that it shall truly reflect a record of work done, it would seem that it can be reformed in equity on the same principle that this court has held an insurance policy can be reformed and enforced under like conditions. Phoenix Ins. Co. vs. Hilliard, 59 Fla. 590, 52 So. 799, 138 Am. St. 171.

But where recovery is sought, it should be reformed, not merely set aside. Where actually executed it cannot be completely eliminated from consideration and given no effect as a part of the contract.

And the evidence on which any reformation is based should measure up to the standard of weight and certainty approved by this court in other suits to reform written instruments so as to make them speak the truth. Horne v. J. C. Turner Cypress Lumber Co., 55 Fla. 690, 45 So. 1016; Baldwin v. Christopher, 75 Fla. 605, 79 So. 339.

Where such certificate is not reformed, it must be given effect as the sole measure by which payment can be demanded by the contractor in so far as it sets forth and computes the amount of work done and the quality and value of it, as performed. This is true altho such final estimate may not be given conclusive effect as a final settlement of disputes arising under the contract which disputes are legal in their nature and depend upon construction of the terms of the contract, their application to particular circumstances, and the like, for settlement. As to the latter the certificate or "final estimate" is not conclusive because the contract itself on its face contemplates that the "final estimate" may become the subject of a dispute, which dispute itself may be finally settled by the Engineer acting as a referee under paragraph 25, or if

that is declined, by the court itself, in an appropriate proceeding on the contract.

The final decree in this case completely sets aside but does not reform the final estimate complained of. To that extent the final decree is in error. Where a final estimate of an engineer is regarded as a condition precedent to recovery, and its absence a complete bar, and it is made to appear that a final estimate was in fact made out and filed by the engineer in accordance with the requirements of the contract, such final estimate cannot be disregarded even in an equity suit for an accounting, but must be accepted as true and final unless reformed in a proper manner. To set aside such final estimate completely would destroy a condition precedent to recovery and thereby bar recovery, while a proper reformation will give effect to the contract by correcting an erroneous certificate so as to make it speak the truth.

But the bill did not pray for reformation of the certificate nor did the court order a reformation, so such certificate must stand and be regarded as controlling in this case in so far as it sets forth the amount of work done under the contract and the value thereof.

But in so far as said final estimate undertakes to finally adjudicate disputed claims for damages, as to which the engineer was not referred to by the parties as a referee, as he might have been under this contract, the findings of the Chancellor must control unless clearly contrary to the evidence.

As to the latter proposition we find the findings of the Chancellor abundantly supported by the evidence and his findings must accordingly be affirmed on this point.

This holding will result in the reversal of the Chancellor's allowance of increased amounts for work done as

represented by the increased amount of 124,396.41 cubic yards for earth approach embankments in lieu of 95,046 allowed by the engineer, and the increase of from $42,413.60 to $42,798.80 in the allowance with reference to piling, and will substitute therefor the figures given in the engineer's estimate.

On the other hand, the findings of the Chancellor to the effect that only $900.00 should be deducted for delay in lieu of $6,000.00 deducted by the engineer should stand. The allowance of $5.00 for one anchor pile to be charged against the contractor is likewise correct. And so is the refusal of the Chancellor to allow any amount as damages to McGirt's Creek Bridge and McGirt's Creek Bridge Span approaches which according to the engineer amounted to $18,753.92.

Interest on the amounts found to be due should not be allowed in the absence of an express provision in the contract on the part of the county agreeing to pay interest since the obligation of a county to pay interest must rest in contract or on a statute.

It is a general rule that in the absence of statute or express contract, the county is not liable for interest on its obligations. National Bank of Jacksonville v. Duval County, 45 Fla. 496, 34 So. 894; 7 R.C.L. page 922.

The decree appealed from is reversed in part and affirmed in part and the cause remanded for entry of an appropriate decree in accordance with this opinion, the costs of this appeal to be taxed here in the same proportion as was decreed by the court below with reference to the costs there.

Decree reversed in part and affirmed in part and cause remanded for appropriate decree.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.