MATHEWS, Justice
(dissenting).
This appeal involves the question of the right to collect interest on interest or interest alleged to be due on interest coupons of obligations issued by the Board of Public Instruction of Putnam County, Florida, after the maturity of such coupons and also interest on the bonds or obligations after the maturity thereof.
Although the payment of principal of the obligations and interest on such obligations until the date of the maturity thereof and the payment of the face of the interest coupons is not questioned, it is necessary to refer to them and the authority under which they were issued in order to determine the main question involved.
The declaration alleges three causes of action. Each cause of action is based upon a specialty and is not based upon the common counts.
The first cause of action involves certain bonds referred to as “County of Putnam Board of Public Instruction Funding Bond”, issued under the authority of Chapter 11073, Laws of Florida 1925.
The second cause of action related to high school bonds, dated July 1, 1925, issued under the authority of Chapter 11074, Laws of Florida 1925.
The third cause of action was with reference to Tax Anticipation Notes, dated July 15, 1929, and maturing on July 15, 1930. These notes contained a recital that they were issued under Section 458 of the Revised General Statutes of Florida of 1920.
Each cause of action demanded judgment for the principal amount of the obligations and the face of the interest coupons or interest on the obligation to the date of the maturity thereof and then added, “together with interest thereon at the legal rate from the maturity of said bonds and coupons, to the date of the rendition of this judgment.”
Chapters 11073 and 11074, Laws of Florida 1925, were local laws and related only to the Board of Public Instruction of Put *778 nam County. Each act authorized the Board to borrow money, in accordance with the terms of the act, to be repaid from the proceeds of a tax levied for that purpose and which tax shall be a part of the tax provided for by Section 8 of Article XII of the F.S.A. Constitution of the State. This provision of the Constitution contains a positive limitation upon the power of the Legislature and the Boards of Public Instruction, and under such limitation the amount of the tax shall not exceed 10 mills, and is appropriated by the Constitution for the support of the public free schools in the County.
Section 458, Revised General Statutes of 1920, authorized the Board of Public Instruction to borrow money and pay interest thereon for the purposes expressly stated in the statute. The notes involved in this case provide that they were issued in compliance with Section 458, and “in anticipation of the receipt of taxes for the said year [meaning the year beginning July 1, 1929]”.
The Board admitted that it was due $50,-000 on account of the principal of the obligations and deposited said sum in the registry of the Court pursuant to the Court’s order of February 8, 1952.
It was provided that the Board should be relieved of the payment of interest, if there be any due, on account of the bonds from the date of the deposit of the $50,000 in the registry of the Court and that the case proceed “on the question of the right [of the plaintiff] to recover interest on the bonds and coupons sued upon”. In a final summary judgment the Court said:
“ * * * After argument by counsel for the respective parties, the Court is of the opinion that the bonds and tax anticipation notes bear interest after maturity at the rate specified in said securities, to-wit: six per cent (6%); that the defendant is liable for the face amount of the interest coupons herein sued upon, together with interest thereon at eight per cent (8%) per annum from their respective maturities, and further, the Court is of the opinion that there is no material issue of fact or law undisposed of and that the plaintiff is entitled to the entry of a summary judgment as to the defendant’s liability for the interest coupons and interest after maturity [$50,000 principal and $79,393.57 interest].”
It is apparent from a reading of the final judgment and the order of the Court that interest after maturity was allowed and included in the final judgment. Among other assignments of error the appellant included the following:
“2. The Court erred in said final judgment in holding that the bonds and tax anticipation notes sued upon bear interest after maturity.
“3. The Court erred in holding that the interest coupons sued upon bear interest after maturity.
“4. The Court erred in holding that said interest coupons bear interest after their respective maturities at the rate of eight per cent per annum.
“5. The Court erred in its final judgment in assessing damages in favor of the plaintiff in the principal sum of $79,393.57.”
The measure of the legal responsibility of the appellant to pay interest after maturity on the coupons or on the main obligations must be determined by the Constitution and statutes in existence at that time. Wright v. Board of Public Instruction of Sumter County, Fla., 48 So.2d 912.
The county school fund provided for in Section 8 of Article XII of the State Constitution, F.S.A., has been referred to as a “sacred fund”. Its purpose, use and disposition is limited by the Constitution. Even the Legislature cannot authorize the expenditure of any portion of this fund in direct violation of the limitation of the Constitution.
Many cases have been cited with reference to municipal corporations or county bonds and others which are not limited and controlled by the same provisions of the Constitution and laws as county school funds.
*779 Even a county is not authorized to pay interest in the absence of a statute or an express agreement. In the case of Duval County v. Charleston Engineering & Contracting Co., 101 Fla. 341, 134 So. 509, 518, it was held:
“Interests on the amounts found to he due should not be allowed in the absence of an express provision in the contract on the part of the county agreeing to pay interest, since the obligation of a county to pay interest must rest in contract or on a statute.
“It is a general rule that, in the absence of statute or express contract, the county is not liable for interest on its obligations. National Bank of Jacksonville v. Duval County, 45 Fla. 496, 34 So. 894, 3 Ann.Cas. 457; 7 R.C.L. page 922.”
In the case of Board of Public Instruction of Okaloosa County v. Kennedy, 109 Fla. 153, 147 So. 250, 254, the Court held that public school funds are a sacred trust, and then said:
“In the judgment rendered in the present case there was included interest on the item of $127 sued on. The allowance of interest prior to judgment, on an ordinary unpaid school claim of the character here dealt with, can only be justified when specially provided for by statute (Duval County v. Charleston Engineering & Contracting Co., 101 Fla. 341, 134 So. 509) or where the contract at its inception had included in it an authorized stipulation agreeing to pay interest on deferred payments required to be made under the contract. No such stipulation appeared in the contract sued on, nor was an agreement to pay interest authorized to be made by the school board after the service had been completely rendered and the contract fully executed, since there was no valid consideration for any such an undertaking.”
There is a material difference between county school funds provided for in Sections 8 and 9 of Article XII of the State-Constitution, F.S.A., and funds' provided for by Section 17 of Article XII. This* distinction was pointed out in the case of State v. Board of Public Instruction of Dade County, 126 Fla. 142, 170 So. 602 Section 9 of Article XII of the Constitution is a definite limitation upon the power of the Legislature and directs that the Board of Public Instruction shall use the funds therein provided for “solely for the support and maintenance of public free schools”. At least a part of that fund is derived from the interest on the “sacred” state school fund. There is more reason to guard with care and caution the county school fund against dissipation by the payment of unauthorized interest than there is for any other fund because it is a sacred fund. Even if it be admitted that under Sections 8 and 9 of Article XII of the State Constitution, F.S.A., the Legislature had the power and authority to provide for the payment of interest on an obligation after the maturity of such' obligation or to pay interest on an interest coupon after the date of the maturity of such interest coupon, Chapters 11073 and 11074, Laws of Florida 1925, and Section 458, Revised General Statutes of 1920, do not expressly or impliedly authorize such payment. We have examined with great care the obligations and the interest coupons and we do not find, any express agreement on the part of the Board to pay the interest on the obligations in question after the date of their maturity or to pay interest on the interest coupons after the date of the maturity of such coupons.
The case of Jefferson County v. Hawkins, 23 Fla. 223, 2 So. 362, has been cited for the authority that interest should be paid on past-due coupons. This case arose from obligations issued by the County Commissioners of Jefferson County in 1858 when the Constitution of the State specifically authorized counties to subscribe for stock in railroad companies under certain conditions. That case and other cases of similar nature are not controlling on the question of school obligations and interest thereon involved in this case. The expert *780 ence of the counties, the loss to the taxpayers of the State, and the general abuses under the Constitution as it then existed was responsible for the elimination of that provision of the Constitution which authorized counties to subscribe to stock in railroad companies and for the inclusion of Section 7 of Article IX of our present Constitution, F.S.A., which provides:
“No tax shall be levied for the benefit of any chartered company of the State, nor for paying interest on any bonds issued by such chartered companies, or by counties, or by corporations, for the above-mentioned purpose.”
As a further revolutionary change in the public policy of the State, Section 10 of Article IX was inserted in our present Constitution, F.S.A., which reads as follows:
“The credit of the State shall not be pledged or loaned to any individual, company, corporation or association; nor shall the State become a joint owner or stock-holder in any company, association or corporation, The Legislature shall not authorize any county, city, borough, township or incorporated district to become a stock holder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual.”
It was held in Jefferson County v. Hawkins, supra, that it was clearly settled that a county did not have the power to issue bonds unless the power is conferred upon it by the Legislature and then every essential requirement of the statute must be followed. In view of the present limitations of our Constitution, bonds cannot be issued unless authority is clearly conferred.
It is next argued that interest on interest, or interest on the coupons after the maturity date of the coupons, or interest on the principal obligation after the maturity date of such obligation, should be paid by the school board and constituted obligations of the school board because there is no direct prohibition against such payments. This argument ignores completely the principle of statutory and constitutional construction long required and adopted in this State that “when a Constitution directs how a thing shall be done that is in effect the prohibition of its being done in any other way”. Without Sections 8 and 9 of Article XII of our Constitution, F.S.A., there would have been nothing to prevent the Legislature- from authorizing county boards of public instruction to issue bonds without limit and impose taxes without limit for the payment of such bonds and interest thereon, not only until maturity but also after maturity.
The Legislature may be all-powerful in taking an action with reference to any subject unless in violation of the United States Constitution or it is restrained and limited by provisions of the State Constitution. Sections 8 and 9 of Article XII are positive limitations upon the power of the Legislature.
In the case of Thomas v. State ex rel. Cobb, Fla., 58 So.2d 173, 177, we stated:
“We are not unmindful of the fact that under our State Constitution it is not necessary that the Constitution contain specific grants of power to the Legislature; that the Constitution is a limitation upon power rather than a grant of power. For example, had there been absolutely nothing in the Constitution with reference to the payment of the salaries of county officers, the Legislature would have been all-powerful in respect to this subject; but when the Constitution made specific provisions with reference to this matter, it amounted in effect to a prohibition in the exercise of the power in any other way. This is made clear in the case of State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 So. 433, wherein it is said, on page 434 of the text:
“ ‘The suggestion that this section contains nothing to prohibit the legislature from passing a law putting the payment of the salaries of county of- *781 fleers on the state is quite untenable. When a constitution directs how a thing shall be done, that is in effect a prohibition to its being done in any other way.’ ”
See also the cases therein cited of: State ex rel. Church v. Yeats, 74 Fla. 509, 77 So. 262; Weinberger v. Board of Public Instruction of St. Johns County, 93 Fla. 470, 112 So. 253; State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374, and Amos v. Mathews, 99 Fla. 1, 126 So. 308.
It is next argued that it is the obligation of the school board to pay interest on the coupons after maturity and interest on the face of the bonds after maturity because under the law merchant and the negotiable instrument law of Florida, interest is payable after the due date of the obligation without any specific obligation or promise to pay such interest. The fallacy of this argument lies in the fact that the instruments in question are not negotiable instruments except in a limited sense. They may be called negotiable instruments but they are obligations of the school board and the authority for their issuance is recited on the face of the obligation. Everyone dealing in such securities is on notice of the provisions of Sections 8 and 9 of Article XII of the State Constitution, F.S.A., and the laws in question enacted pursuant to said sections of the Constitution.
In this particular case we should bear in mind that the obligations in question are school obligations and not municipal bonds. The Legislature has more latitude with reference to municipal bonds. It has plenary control over municipalities. In 42 A.L.R. in the annotation on Municipal Bonds-Negotiability, on page 1030, the author cites the cases of Morrison v. Austin State Bank, 213 Ill. 472, 72 N.E. 1109, 104 Am.St.Rep. 225, and Northern Trust Co. v. Village of Wilmette, 220 Ill. 417, 77 N.E. 169, 5 Ann.Cas. 193, and then said:
“In this case it was held that where a municipality issues bonds under a statute authorizing it only to issue bonds payable out of a special fund, the bonds are not negotiable, though made payable to bearer; * * *.”
In the case of Mississippi Valley Trust Co. v. Oklahoma Ry. Co., 156 F.2d 283, 286, the Circuit Court of Appeals, Tenth Circuit, said:
“ * * * the coupons were nonnegotiable and a nonnegotiable coupon does not bear interest after maturity in the absence of an express provision therein for the payment of interest after maturity.”
The obligations in this case are payable from a special fund. The fact that an act may declare bonds or interest coupons to be negotiable does not make them so if payment is limited to a particular fund. F.S. Section 674.02, F.S.A. declares that in order for an instrument to be negotiable it must “contain an unconditional promise or order to pay a certain sum in money”, and F.S. Section 674.04, F.S.A. declares that “an order or promise to pay out of a particular fund is not unconditional”.
Section 8 of Article XII of the Constitution, F.S.A., limits the rate of the tax to ten mills and limits the use of the funds resulting therefrom to “the support of the public free schools [of the County]”.
In Board of Public Instruction of Okaloosa County v. Kennedy, supra, this Court held that such a board could pay legal debts incurred in previous years out of this fund provided the board made provision first for the current support of the county schools.
In the case of State v. Board of Public Instruction for Levy County, 143 Fla. 212, 196 So. 452, 454, this Court refused to validate an issue of refunding bonds because the amounts required annually to pay the debt service would not leave enough for the operation of the schools. The Court said:
“Refunding bonds cannot be paid from any county school funds included in section 9, Article XII, except a reasonable part of the funds that may be derived from levies under section 8, *782 Article XII. See Bryan v. Board of Public Instruction [142 Fla. 691], 195 So. 697, filed April 30, 1940.
‡ % # % ‡ %
“ * * * The constitution does not contemplate that the county school funds derived from the ad valorem tax levied under section 8, Article XII, constitution, that may under authorized conditions be used to pay indebtedness legally incurred for public free school purposes, shall be so pledged or disbursed as to unduly reduce the funds raised under Section 8, Article XII, for the current support and maintenance of public free schools, see State v. Board of Public Instruction of Dade County, 126 Fla. 142, text page 152, 170 So. 602, and creditors who are to — paid from tax levies under section 8, Article XII, are held to notice of the intendments and limitations of the constitution as to such tax levies.”
It is clear that the obligations are to be paid from a special fund which is limited. This fund must be used, first, for the current operation of the schools and the payment of its debts. The operation of schools constituted the prior claim against the fund and this left uncertain the amount remaining available for the payment of bonds and coupons.
In discussing and passing upon the negotiability of bonds in the case of Gate City Garage, Inc., v. City of Jacksonville, Fla., 66 So.2d 653, on page 663 of the text, this Court said:
“The bond form in the Miami Beach case declared, ‘This bond is fully negotiable for all purposes.’ The language in that case was much stronger than the language in the bond form now before the Court. The bond form in this case recites that it has all of the ‘qualities and incidents’ of a negotiable instrument. When it is declared that a bond has all of the ‘qualities and incidents’ of a negotiable instrument and further declares that it is payable solely from a particular fund, then the ‘qualities and incidents’ of the bond are limited by the further provision that notwithstanding the ‘qualities and incidents’ of negotiability, it is limited to the extent that payment can be made only from the special fund and although the bond may be negotiated as a negotiable instrument, the bondholder and all other persons dealing in such bonds are put on actual notice of such limitation.
“F.S. § 181.06, F.S.A., is with reference to the terms of refunding bonds of towns and cities, but is persuasive on this question. This section reads, in part, as follows:
“ ‘ * * * Notwithstanding the form or tenor thereof, and in the absence of an express recital on the face thereof that the bond is nonnegotiable, all refunding bonds shall at all times be, and shall be treated as, negotiable instruments for all purposes.’
“Notwithstanding the fact that the bonds in this case may have all of the ‘qualities and incidents’ of negotiable instruments, the payment of the principal and interest thereof is specifically limited to a special fund set forth in the bond itself and this limitation is binding upon the bondholders and all others dealing in such bonds.”
See also Chase v. City of Sanford, Fla., 54 So.2d 370.
I would hold that it was not an obligation of the School Board of Putnam County to pay interest on the principal of the obligations after the maturity thereof or to pay interest on the interest coupons after the due date of such coupons.
I would affirm in part and reverse in part for further proceedings in accordance with this opinion.