MATHEWS, Chief Justice.
This is an appeal by a sub-contractor, who was the plaintiff in the Court below, from a final judgment in favor of the main contractor who had a contract with the Board of Public Instruction of Pinellas County for the construction of three school buildings at Largo, Tarpon Springs, and St. Petersburg. The sub-contracts adopted by reference the plans and specifications which had been prepared by the architect and were contained in the main contract. Among other things the specifications provided:
“No sub-contractors' shall be employed by the Contractor except such as may be satisfactory to the Owner and the Architect, the Contractor to furnish evidence of their reliability and fitness for the work. All sub-contracts must provide that the subcontractors shall be subject to all the terms and conditions of this specification and contract, and each sub-contract, shall further provide that it may be terminated by the Contractor whenever the Architect shall certify to the Contractor that, in his opinion, the work included in it is unreasonably and unnecessarily delayed. The Contractor shall at once terminate any such sub-contract on the issue of such certificate by the Architect.
“No alterations shall be made in the work, except on written order of the Architect.' The amount to be paid by the Owner or allowed by the Contractor by virtue of such alterations, shall be stated in said order. Should the owner and the Contractor not agree as to the amount to be paid or allowed, the work shall proceed under the order above required, and in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in the contract.”
While the work was in progress the architect wrote a letter to the main contractor reading as follows:
“Phillip F. Kennard
“Architect and Engineer
“105 Second Avenue N. E. “St. Petersburg, Florida “March 5, 1952
“Subject: Tarpon Springs Elementary School
“Largo Elementary School
“Arnold Construction Company
“7 Murray Building
“Palm Beach, Florida.
“Gentlemen:
“Yesterday during visits to the two subject schools I found that heating grids which had been delivered to each of the jobs do not comply with the specifications. A considerable proportion of the pipe is steel instead of the wrought iron specified.
“The grid materials was stacked in a manner which required a lot of time and effort to make a thorough examination of the pipe. The piles had been covering with roofing felt which in my opinion was entirely unnecessary, because under the circumstances wrought iron pipe would not need to be protected from the weather.
“This is to confirm my verbal instructions to your Mr. Dan Wiggs that these grids are rejected. They must be kept on the jobs pending further investigation of the matter, then on instructions from this office the pipe must be removed immediately from the sites.
*707 “In fairness to your heating contractor it is assumed that the substitution was not intentional, but such a lack of diligence in meeting contract obligations forces me to the conclusion that May Plumbing Company is no longer acceptable on any of the work under my supervision and you are hereby instructed to correct this situation immediately.
“The matter will be presented to you in a much more serious manner should the investigation now under way, by any chance, develop the fact that the substitution of materials was intentional. In all fairness to your heating contractor the investigation will be thorough, and will include those who manufactured, shipped, sold, welded or handled the pipe in any way.
"No effort will be spared in order to clear May Plumbing Company of any suspicion of intentional breach of contract.
“Yours very truly,
“/s/ Philip F. Kennard
“Copy to:
“Mr. Turville, Mr. Christian, Mr. Green, Arnold Const. Co., Palm Beach & St. Petersburg”
Later on March 14, 1952, the architect issued a certificate to the contractor which contained the following:
“* * * the plumbing and heating work on all three * * * jobs will be unreasonably and unnecessarily delayed if this (May) sub-contractor is allowed to proceed with the future work on the three jobs in question. Therefore, you are hereby advised and requested to terminate the sub-contracts with the May Plumbing Company as provided for in the specifications for each of said jobs on Page 4, which specifications are a part of the contract with your company.”
Immediately upon receipt of the certificate the main contractor served notice upon the sub-contractor (written notice) of cancellation of all three sub-contracts and gave as a reason the architect’s certificate together with his own independent investigation which revealed the substitution of steel pipe in the fabrication of certain heat coils, failure to secure a licensed plumber for plumbing work in St. Petersburg, and assignment of a sub-contract, or substitution of another plumber, at the latter job, stating that all of this “will unquestionably cause serious delay in the general progress of the buildings in question.
The plaintiff-appellant sued for a money judgment to reimburse it for expenditures and anticipated profits on the theory that the sub-contracts were wrongfully cancelled, or in the alternative, a money judgment on a quantum meruit basis for all work and labor used and retained by the defendant in the ultimate performance of its general contract. In due course the pleadings were settled, the issues made and the demand for a jury trial theretofore made in the case was waived in writing together with the consent that the case be submitted to trial by the Court “without the intervention of a jury.” A copy of this waiver was served on the 24th day of February, 1953, and the motion for summary judgment was filed on March 20,1953. No objection to this procedure appears to have been made at any time by the plaintiff-appellant, except in briefs filed here.
The record shows that the plaintiff participated in the subsequent proceedings by the examination of witnesses and the filing of depositions. Under the facts shown in this case the plaintiff-appellant is in no position to complain about submitting the case to a jury.
At the conclusion of the proceedings of the parties before him, the trial Judge rendered an opinion containing findings of fact and conclusions of law upon which the final judgment was based. In the opinion the trial Judge noted the consent to the trial of the cause by the Court without a jury and then proceeded to make findings with reference to a summary judgment in which he stated:
*708 “Consideration of a motion for summary judgment requires that the court determine whether a genuine issue of fact exists. If so, the motion will be denied. If not, the motion will he granted. To extricate from the mass of irrelevant detail the testimony of witnesses and affiants upon matters pertinent and material to the controversy is seldow- an easy task. This case is no exception.
“The' evidence is assayed hy this Court is ultimately:
“1. (a) The contract called for wrought iron heat grids.
“(b) Plaintiff substituted steel for wrought iron.
“2. (a) The contract required that Plaintiff obtain all necessary licenses for plumbing in St. Petersburg.
“(b) Plaintiff failed to obtain such licenses.
“3. (a) The contract called for copper tubing within and under the buildings.
“(b) Plaintiff substituted galvanized steel pipe.
“4. (a) The contract called for Acme pumps or equivalent, any substitution to be made only upon authority of owner, the Pinellas County Board of Public Instruction, and not the architect.
“(b) Plaintiff sought such authority to make the proposed substitution, which was refused.
“5. (a) The contract called for the architect to use his best judgment and for Defendant to terminate the contract with the sub-contractor when so directed by the architect.
“(b) Upon receipt of certificate from the architect that Plaintiff was no longer acceptable as sub-contractor the Defendant was required to terminate Plaintiff’s sub-contract.
“The contract contained the following provisions :
“ ‘All sub-contracts must provide that the sub-contractors shall be subject to all the terms and conditions of this specification and contract, and each sub-contract shall further provide that it may be terminated by the Contractor whenever the Architect shall certify to the Contractor that, in his opinion, the work included in it is unreasonably and unnecessarily delayed. The Contractor shall at once terminate any such sub-contract on the issue of such certificate by the Architect.’
“Under the foregoing provision, Defendant was required to terminate Plaintiff’s sub-contract upon receipt of the architect’s certificate. The architect was not required to be always correct in his opinion, but merely to use his best and honest judgment.”
In this case it is undisputed that the architect certified to the contractor that in his opinion the work included was unreasonably and unnecessarily delayed by the sub-contractor and that the main contractor was directed to terminate the sub-contract. Under such circumstances the main contractor had no alternative except to terminate the contract of the sub-contractor unless he could show bad faith, fraud or corruption on the part of the architect. There was no showing of fraud, bad faith or corruption on the part of the architect and such questions are eliminated from further consideration. See Duval County v. Charleston Engineering & Contracting Company, 101 Fla. 341, 134 So. 509; Note, 54 A.L.R. 1256-1258 inch In 12 Am.Jur., Contracts, Sec. 342, pp. 898-899, it is stated:
“There is a class of cases where the article sold or the work to he done or performed is to be subject to the approval of, or to be satisfactory to, some third person, and in many instances that person is the agent or employee of one or the other of the parties to •the contract. In cases of this character *709 the approval of the party so designated becomes a condition precedent to a recovery for the price. In the absence of fraud or bad faith in the conduct of such party in respect of his approving or withholding his approval, his judgment or determination is to be accepted as final and conclusive. No mere error or mistake of judgment will vitiate his determination. The very object of his appointment is to prevent and exclude contention and litigation; and hence nothing short of fraud or mala fides in the exercise of his power to reject or approve the article contracted for will dispense with the strict legal effect of the condition precedent. * * *”
We have considered all other assignments of error and they are without merit. No reversible error has been shown.
The judgment appealed from be and the same is hereby affirmed.
TERRELL, SEBRING and ROBERTS, JJ., concur.