## W. J. PIOWATY v. REGIONAL AGRICULTURAL CREDIT CORPORATION OF WASHINGTON, D. C. AND CARL PIOWATY v. REGIONAL AGRICULTURAL CREDIT CORPORATION OF WASHINGTON, D. C.

34 So. (2nd) 94            January Term, 1948

February 13, 1948            En Banc

Rehearing denied March 16, 1948

*J. Thomas Gurney* and *Joseph P. I. za, Jr.,* for appellants.

*Giles F. Lewis,* for appellee.

BARNS, J.:

This is a case wherein the appellants were defendants below. The appellee-plaintiff sued the defendants on a contractual obligation which had the form of an ordinary promissory note, together with the following provisions:

"The advances represented by this note are made to finance the production of the quantity of essential war crops specified in the makers' application on Form RACC-RP3, which bears the same identification number (preceded by the letter W) of this note.

"The makers shall be personally liable for the full amount of such advances, subject to the condition that, if the United States Departmet of Agriculture War Board of the county identified by the state and county code appearing in the identification number on this note (or such other agency or person as the Regional Agricultural Credit Corporation of Washington, D. C., may designate to make the certification herein required) certifies that" — (Here follow the five conditions fully set forth in the opinion prepared by Mr. Justice BUFORD).

And plaintiff's-appellee's declaration of one count alleges the execution and non-performance of the contract, and further alleges:

"That, pursuant to the provision contained in the said note or obligation permitting the plaintiff to designate some other agency or person to make the required certification, Regional Agricultural Credit Corporation of Washington, D. C., on July 2, 1943, *designated the District Vice President of the plaintiff corporation to certify,* upon the recommendation of the County War Board, as to compliance by the defendant and other borrowers with the conditions set out in

the note or obligation herein sued upon and in similar notes and obligations; that thereafter the defendant applies to the District Vice President of Regional Agricultural Credit Corporation of Washington, D. C., through the County War Board of Orange County, Florida, for cancellation of the balance of his obligation, but after consideration of the defendant's application, the said County War Board refused to recommend that the balance of the said advances be cancelled, and has not recommended and still refuses to so recommend; and the plaintiff's District Vice President thereupon refused to certify that defendant had complied with the conditions set out in the said note or obligation and has not certified and still refuses to so certify."

The trial judge overruled a demurrer to this declaration and this ruling is assigned as error.

The following provisions of said promissory note, to-wit:

"The makers shall be personally liable for the full amount of such advances, subject to the condition that, if the United States Department of Agriculture War Board of the county identified by the state and county code appearing in the identification number on this note (or such other agency or person as the Regional Agricultural Credit Corporation of Washington, D. C., may designate to make the certification herein required) certified that"—are provisions inserted in the note for the benefit of the promissors, defendants-appellants, and the benefits thereof in no wise flowed to the promisee. It was not necessary, yet not improper, for the plaintiff-appellee to plead matters which relate to discharge, and the plaintiff might have denied the discharge thereof generally.

The quoted language was not a "condition precedent" to the fixing of liability, but it was a "condition subsequent" for the promissors' benefit, and relating to discharge or excuse for non-performance, only to be taken advantage of in some affirmative manner by the promissors. Like all other matters relating to discharge, it was for the defendants to plead and prove and the recital thereof and of the acts of the parties relating thereto in no wise affected the *quality* of plaintiff's declaration.

This assignment of error not well founded.

The contract specified that upon the promissors procuring a specified certificate the obligation would be discharged. This contemplated that the named agency which was to determine whether or not the "conditions subsequent" had transpired would determine same fairly and on a rational basis, and the promissors, in making the promise, had a right to rely upon "fair play." For the promissors not to receive "fair play" would work an implied fraud upon them.

Appellant's second assignment of error complains that:

"The Court erred in entering its order dated September 9, 1946, recorded in Minute Book LL, page 305, sustaining the demurrer of the plaintiff to the Third and Fourth Pleas of the defendant, and granting the motion to strike portions of the pleas."

And the question presented in argument of this assignment is:

"QUESTION 2. In an action on a special advance made by one party to another an agreement, which provided for the cancellation of the balance due, upon the certification of named conditions by a designated agent, is the lack of such a certificate merely prima facie evidence of the non-compliance with the conditions, or is it necessary to allege and prove that in addition to compliance with the conditions, the agent acted arbitrarily and capriciously in refusing to execute the certificate."

Appellant states: "This is the heart of the case."

This seems to be correct. For the promisee to perform the "conditions subsequent" and for the agency named to then withhold the certificate, after undertaking to act, would amount to arbitrariness and capriciousness and be an implied fraud upon the promissors, but such is an affirmative defense which must be plead, as the defendants in this case did, by their fifth and sixth pleas.

Plaintiff's declaration alleges that in accordance with the provisions of the contract the promisee designated the *"District Vice President of the plaintiff corporation to certify"* as

to the promissors' performance of the condition subsequent, but the plea sets up that "the United States Agricultural War Board of Orange County, being the county identified by the State and County Code appearing in the identification number on the note sued on, the same being the agent of the plaintiff herein for such purpose, did wrongfully, arbitrarily, and without justification, fail and refuse to certify that this defendant had, in all respects, complied with the conditions . . . "

This assignment of error not well founded. The settlement of the issues of fact was for the jury to determine and not a question of law for the court.

The act of the trial judge in sustaining a demurrer to the third and fourth pleas, which merely alleged performance of certain "conditions subsequent," (without excusing absence of certificate) appears not to have been error; the parties to the contract provided more, and, for the defendants to receive the benefit of the contractual provisions relating to discharge, more was required to be plead and proven. This they attempted to do in their fifth and sixth pleas. That part of the assignment of error relating to striking a part of defendant's pleas is not argued, therefore abandoned.

Affirmed.

THOMAS, C. J., BUFORD, CHAPMAN and SEBRING, JJ., concur.

TERRELL, BUFORD and ADAMS, JJ., dissent.
BUFORD, J., dissenting:

On appeal the two above styled cases have been consolidated for consideration and, therefore, we dispose of both cases in one opinion.

In 1943, each of the appellants, wishing to engage in the production of beans near Zellwood, Florida, for market, contacted the appellee through its duly authorized agents for the purpose of procuring a Government loan to aid in the production of such crop and, as evidence of their respective promises to repay the amount of the said advances, executed a contract, which contract thereafter had endorsed upon it the dates and amounts of the advancements made under such contract.

The instruments so executed, after the entries aforesaid, are in the following form, to-wit:

"Special War Crop Advance

$4,225.00

| Zellwood | Florida | March 10, 1943 |
|----------|---------|----------------|
| City | State | Date |

"On or before June 30th 1943, for value received, I, we and each of us, jointly and severally, promise to pay to the order of the Regional Agricultural Credit Corporation of Washington, D. C. at its office in Kansas City Missouri, Four Thousand Two Hundred Twenty-five and No/100 Dollars, with interest at the rate of 5 percent per annum from date hereof payable at maturity.

"In the event this note is placed in the hands of an attorney for collection or suit is brought on the same, or any portion thereof, or if collected by any court proceedings, I, we and each of us, jointly and severally, further agree to pay such reasonable attorney's fees and costs of collection as may be permitted by law to be charged.

"The makers and endorsers of this note severally waive presentment for payment, demand, protest and notice of non-payment thereof, and all defenses on the ground of any extension of the time of payment that may be given by the holder or holders to them or either of them.

"The advances represented by this note are made to finance the production of the quantity of essential war crops specified in the makers' application on Form RACC-FP3, which bears the same identification number (preceded by the letter W) as this note.

"The makers shall be personally liable for the full amount of such advances, subject to the condition that, if the United States Department of Agriculture War Board of the county identified by the state and county code appearing in the identification number on this note (or such other agency or person as the Regional Agricultural Credit Corporation of Washington, D. C., may designate to make the certification herein required) certifies that—

"1.   The makers have used the amount advanced for producing the crops for the production of which the advances were made;

"2.   The makers have provided for insurance on such crops to the extent and in the manner required by the Regional Agricultural Credit Corporation of Washington, D. C. to protect its interest in such crops;

"3.   The makers in good faith have diligently applied principles of good husbandry to the production of such crops;

"4.   The makers have applied to the repayment of the advances an amount equal to all proceeds of such crops, including the proceeds of any incentive or other similar payments made by the United States on such crops and the proceeds of any insurance on such crops; and

"5.   Such amount has been insufficient to repay the advances in full, then the Regional Agricultural Credit Corporation of Washington, D. C., will not look to the other assets of the makers for the repayment of that part of the advances which exceeds such proceeds but will cancel the makers obligation for the balance of the advances.

"This note is secured by a lien instrument dated March 10, 1943, bearing the same identification number (preceded by the letter W) as this note.

-------------------------------------                    W. J. Piowaty

-------------------------------------                    W. J. Piowaty

-------------------------------------                                              -------------------------------------

W. J. PIOWATY

| Date | INTEREST | PRINCIPAL | |
|------|----------|-----------|---|
| | Amount Paid to—Advances | Payments | Balance |
| 3-17-43 | $1225.00 | | $1225.00 |
| 4-1-43 | 1000.00 | | 2225.00 |
| 5-8-43 | 1000.00 | | 3225.00 |
| 5-17-43 | 995.75 | | 4220.75 |
| 5-19-43 | 4.25 | | 4225.00 |

"I, (we) hereby guarantee payment of this note, or any renewal or extension thereof, and all expenses of collection thereof, or in the enforcement of this guarantee, including reasonable attorney's fee, and I (we) waive, presentment, protest, demand and notice of every kind."

After the payment to the appellee by the appellants of the total amount received by each of them as the proceeds of the said crop, less necessary costs of packing which was charged by packing house operators, the appellants applied to the Agricultural War Board of Orange County, Florida, for a certificate showing that the makers of the instruments above referred to had

" . . . used the amount advanced for producing the crops for the production of which the advances were made;

" . . . provided for insurance on such crops to the extent and in the manner required by the Regional Agricultural Credit Corporation of Washington, D. C., to protect its iterest in such crops;

" . . . Diligently applied principles of good husbandry to the production of such crops;

" . . . applied to the repayment of the advances an amount equal to all proceeds of such crops, including the proceeds of any incentive or other similar payments made by the United States on such crops and the proceeds of any insurance on such crops; and

"Such amount has been insufficient to repay the advances in full, then the Regional Agricultural Credit Corporation of Washington, D. C., will not look to the other assets of the makers for the repayment of that part of the advances which exceeds such proceeds but will cancel the makers obligation for the balance of the advances."

But, the said Agricultural War Board of Orange County, Florida, and also the District Vice President of Regional Agricultural Credit Corporation failed and refused respectively to recommend and make the certificate required under the contract and, thereafter, on the 27th day of June, 1945, appellee, as plaintiff, filed its suits in Orange County, Florida against the respective appellants as defendants for the unpaid balance of the respective advances made under said respective contracts.

After demurrers and motions had been ruled upon the cases were at issues upon amended declarations and pleas. In the pleas the defendants averred in effect that they had fully complied with each and every of the requirements contained in the respective contracts and were, therefore, entitled to have the obligation for the unpaid amount of the advancements cancelled, and that plaintiff's agents had arbitrarily, capriciously and without any showing that the respective defendants had not performed each and every of the acts and things required of them to be performed to entitle them to cancellation of the obligation to pay the balance of the amount of the advancements, failed and refused to make the required certificates. On these issues the cases went to trial and resulted in judgments for the plaintiff. From these judgments appeals were perfected.

There appears to have been much confusion in the trial of the cause as to whether or not in the absence of fraud on the part of the agents of the plaintiff who were designated by plaintiff to make the certificates above referred to, the defendants could. interpose and prevail under the defenses stated.

It will be observed that there is nothing in the contract which makes the action or non-action of the agents designated to certify performance final. The law appears to be well settled in this regard as was stated by the Circuit Court of Appeals, Fifth Circuit, in Franklinville Realty Co. v. Arnold Construction Co., 120 Fed. (2nd) 144, as follows:

"In the absence of specific provision in a contract such as this that architect's certificates are to be final, such certifi-

cates do not have conclusive effect, but are merely prima facie evidence of their contents. Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 S. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572, and cases cited; Duval County v. Charlestown Engineering Co., 101 Fla. 341, 134 So. 509; Mississippi Fire Ins. Co. v. Evans, 153 Miss. 635, 120 So. 738; Abercrombie v. Vandiver, 126 Ala. 513, 28 So. 491."

See also Duval County v. Charlestown Engineering Co., 101 Fla. 341, 134 So. 509.

From a perusal of the record, it appears to us that each of the defendants in the court below, appellants here, had complied with each and every of the conditions stated in the respective contracts to entitle them respectively to the cancellation of the obligation to repay the balance left after having deducted the amount that was received for the respective crops and paid over to the plaintiff, appellee here.

It is true that there was an insignificant amount of the proceeds of each crop paid for services of packing house operator for packing the beans, but it appears that no point was ever made of this by the plaintiff until after the institution of its suits. The agents designated by the plaintiff to certify to the performance by the defendants have never at any time pointed out to, or advised, either of the defendants the matter or thing which plaintiff claimed that defendants had failed to do to entitle them to cancellation, nor has the plaintiff shown by proof reflected in the record here that defendants failed to perform each and every act required by the contract to be performed which would entitle each of them to cancellation of the obligation for the amount of the unpaid balance of the respective advancements.

It is our conclusion that when the defendants showed by uncontradicted evidence that they each were entitled to have the certificates required by the contract and that those charged with the duty of executing such certificates had failed and refused to execute the same, these facts were sufficient to show that such agents in so doing acted arbitrarily, and capriciously against the interest of the defendants. Such action or non-action on the part of the agents,

above referred to, made it unnecessary for the defendants to have such certificates in order to have cancellation of the unpaid balance of the advancements.

It is a matter of general and common knowledge of which courts may take judicial cognizance that the Federal Government at that time was making such cash advancements as are here considered for the purpose of encouraging farmers to produce food crops and, to do that the Government advanced such money as was considered necessary to enable the farmer to plant, produce and save crops with the understanding and agreement, in effect, that if the farmer planted and produced a crop and used due diligence and recognized efficient practices in doing so, the Government would look to the crop to satisfy and repay the amount of advances so made. It further agreed that if the farmer having produced and gathered and disposed of the crop and applied the receipts therefrom to repaying the advances and such receipts from the crop were insufficient to repay all the advances made the Government, and not the farmer, should sustain the loss of the unpaid balance.

It is conclusively shown that in the cases now before us the respective farmers complied with every part of the contract and in their endeavor in this regard each lost considerable more money than the Government will lose when the balances claimed on these obligations are cancelled.

From the record before us it appears that the trial court entertained the view that it was necessary for the defendants not only to show that they had complied with all conditions stated in the contracts necessary to have the balance of the obligations for advancements cancelled, but also necessary for them to prove by some additional evidence that the action of the agents who were designated to certify to such performance had been arbitrary and capricious, which view appears to have been reflected in the verdict of the jury.

Our conclusion is that the evidence that the defendants had complied with the terms of the contracts was sufficient to establish that the agents above mentioned acted arbitrarily

and capriciously in failing and refusing to make and deliver such certificates.

For the reasons stated, I think the judgments should be reversed and the cause remanded for further proceedings.