UNITED STATES of America,
Plaintiff,

v.

Harold W. ANDERSON, Defendant.

Civ. No. 67–53.

United States District Court
D. Nebraska, Omaha Division.

Nov. 29, 1954.

Donald R. Ross, U. S. Atty., Omaha, Neb., Charles Thone, Asst. U. S. Atty., Lincoln, Neb., for plaintiff.

Charles H. Yost, Fremont, Neb., for defendant.

DONOHOE, Chief Judge.

This action was instituted by the United States as the real party in interest to recover the balance due from the defendant Harold Anderson on a Commodity Credit Corporation note. This court has jurisdiction by virtue of Section 714b(c), Title 15 U.S.C.A. The case was tried to the court, sitting without a jury, and after careful consideration of the material and competent evidence adduced at the trial, the court makes the following special

## Findings of Fact

In the year 1951, Harold Anderson, who was farming in Boone County, obtained three indirect Commodity Credit Corporation loans on 1950 stored corn. The loan numbers, the date of each loan, the amount of the corn securing each loan, and the amount of each loan are listed below:

| Number | Date | Corn | Amount |
|---|---|---|---|
| 48–006–172A | January 24, 1951 | 3,389 bu. | $4,779.93 |
| 48–006–171A | January 31, 1951 | 1,619 bu. | $2,218.03 |
| 48–006–207A | March 16, 1951 | 1,611 bu. | $2,207.07 |

The corn stored pursuant to loan No. 48–006–172A, which is the note involved in this case, was housed in a modern cement crib, while the other corn stored by defendant was kept in temporary type cribs constructed of wooden slats and wire.

In December of 1951, at the maturity of the loans listed above the defendant elected to sell the corn stored pursuant

to loan No. 48–006–171A to the Newman Grove Company. With the proceeds of the sale, defendant redeemed this loan.

The corn stored pursuant to the other two loans was resealed and remained in the same cribs in which it had originally been stored.

In December of 1951, the defendant sold his farm to Edmund Drog of St. Edwards, Nebraska. Although possession of the farm was to be delivered the following summer Drog had agreed that the stored corn could remain on the farm until such time as the defendant decided to sell it or deliver it to the Government.

During the winter of 1951–52, defendant used, without request or permission from any Government agent, approximately 200 bushels of corn stored in the large cement crib as feed for his chickens. The defendant did not attempt to conceal this fact from anyone, including the Government agents.

When defendant left his farm in June of 1952, he advised Conrad Anderson, the County P.M.A. official, that he was moving to Fremont, Nebraska, and that he was leaving the stored corn on the farm pursuant to an agreement with Drog, the new owner. Conrad Anderson indicated that this would be satisfactory to the Government. Although Conrad Anderson passed the farm several times after the defendant's departure, he did not at any time stop and inspect the cribs to see if the stored corn was substantially the same as when sealed. Nor did the defendant return to the farm at any time after his departure for the purpose of inspecting the sealed corn.

On September 24, 1952, defendant sold the corn in both cribs to the Newman Grove Company for $1.53 a bushel. The corn was not kept separate in shelling and consequently the corn was intermingled. However, this is not significant, because all of the corn in both cribs was sold at the same time for the same price. It seems undisputed that the defendant sealed 5100 bushels in the two cribs pursuant to the two loans. It is equally without dispute that only 2,619 bushels and 35 pounds of corn were delivered to the Newman Grove Company. In other words, there was a shortage of approximately 2,480 bushels.

Because of the shortage, all of the corn sold for only $4,008.05, substantially less than the amount due on both notes. Defendant endorsed the check received from the Newman Grove Company over to Conrad Anderson of the P.M.A. Committee. The Committee applied $2,308.30 in satisfaction of loan No. 48–006–207A and applied the balance of $1,699.75 on loan No. 48–006–172A. This left a principal loan deficiency in the sum of $3,161.64.

Although the exact cause of the shortage is not disclosed by the evidence, the following inferences seem compelled from the circumstances that are disclosed by the evidence. The 2,480 bushel shortage could not have been caused by mere shrinkage. The only reasonable inference is that someone pilfered the corn. But who, and when, the evidence does not disclose.

## Discussion

The contract pursuant to which the loan in issue was made, among other things, provides:

"(6) If the Producer has made a fraudulent representation herein, in the chattel mortgage, or in obtaining the loan, or if any portion of the commodity has been converted or unlawfully disposed of by the Producer, the Producer shall be and remain personally liable to the holder of the note for the amount due on the loan, and for any amount which any holder of the note pays in order to protect or retain his interest in the commodity, and for the amount of any loss or liability incurred by any holder of the note as a result of such fraudulent representation, conversion, or unlawful disposition." [1]

Since it is undisputed that defendant did unlawfully convert a portion of the corn, to-wit, approximately 200

1. Exhibit 3, sec. 6.

bushels, to his own use, it seems inescapable that he is liable for the amount due under the loan because the contract specifically provides that "if *any portion* of the commodity has been converted or unlawfully disposed of by the Producer, the Producer (defendant herein) shall be and remain personally liable to the holder of the note for *the amount due* on the loan, * * *."

 In addition to the foregoing, the contract also provides:

"In the event of an uninsured physical loss of or damage to the commodity occurring without fault, negligence, or conversion on the part of the Producer, or any other person having control of the storage structure, and resulting solely from an external cause other than insect infestation or vermin, such loss or damage will be assumed by the Corporation and the amount due on the loan shall be reduced by the amount of the loan made with respect to the quantity of the commodity so destroyed or by an amount equivalent to the extent of the damage as determined by the Corporation, provided the Producer has given the County Committee immediate notice in writing of such loss or damage, and provided there has been no fraudulent representation made by the Producer herein, in the chattel mortgage or in obtaining the loan." [2]

In order for the defendant to be entitled to the benefits of this provision the court would have to find that the 2,480 bushels of corn were taken out of the cribs and that neither defendant, Harold Anderson, nor Edmund Drog, who had control of the storage structure after Harold Anderson moved to Fremont, were negligent in connection with their care of the stored corn, and further that Harold Anderson gave immediate notice, in writing, of the loss to the County Committee. The court is not convinced by the evidence that such facts exist.

For the reasons stated, the plaintiff is entitled to recover the amount due on the note in suit, together with interest and costs. Counsel for the United States shall prepare and submit for approval the appropriate judgment to be entered herein.