**UNITED STATES of America.**
**Plaintiff,**

v.

**Dr. Thomas M. KING, Defendant.**
**No. 710.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

Dec. 11, 1957.

Charles W. Atkinson, Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Wood, Chesnutt & Smith, Hot Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

This case is before the Court upon plaintiff's motion for summary judgment and the response thereto of the defendant, including a motion for summary

judgment in favor of defendant. The question presented is whether there is any material issue of fact and whether either party is entitled to a summary judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. In its complaint plaintiff alleges that for a valuable consideration and to secure a loan from the Regional Agricultural Credit Corporation, Washington, D. C., the defendant executed and delivered his promissory note to said corporation in the sum of $550, said note being dated March 17, 1943, and bearing interest at the rate of 5 percent per annum, due and payable on or before July 5, 1943.

Plaintiff alleges that the principal now due on the note is $222.16, and interest as of April 1, 1957, amounted to $154.05, with interest thereafter at the rate of 5 percent per annum.

The defendant in his answer admits the execution of the note, but asserts two defenses: (1) that he complied with the requirements of the note and was entitled to have it canceled; (2) that the loss was caused by the failure of the plaintiff to maintain and support the market price of the potatoes. Among other things the defendant in paragraph IX of his answer alleged:

"The defendant paid the plaintiff on said note the sum of $27.84 which constituted the full cash proceeds of the sale of potatoes produced. In addition, the defendant traded to Stuarts Grocery Store a sufficient amount of said potatoes to pay a bill of $100.12 incurred for fertilizer used to produce the said potatoes."

In addition to the complaint and answer, the record contains certain requests for admissions under Rule 36, Federal Rules of Civil Procedure, filed by plaintiff and the responses thereto of the defendant. These requests and responses thereto establish that on March 17, 1943, the defendant applied to the Regional Agricultural Credit Corporation of Washington, D. C., for a loan of $550 to be used for the purpose of producing 11 acres of Irish potatoes as essential war crops. On the same date defendant executed his promissory note in the amount of $550, payable on or before July 5, 1943, with 5 percent interest. The note contained the following provisions:

"The makers shall be personally liable for the full amount of such advances; subject to the condition that if the United States Department of Agriculture War Board of the county identified by the state and county code appearing in the identification number on this note (or such other agency or person as the Regional Agricultural Credit Corporation of Washington, D. C., may designate to make the certification herein required) certifies that

"1. The makers have used the amount advanced for producing the crops for the production of which the advances were made;

"2. The makers have provided for insurance on such crops to the extent and in the manner required by the Regional Agricultural Credit Corporation of Washington, D. C., to protect its interest in such crops;

"3. The makers in good faith have diligently applied principles of good husbandry to the production of such crops;

"4. The makers have applied to the repayment of the advances an amount equal to all proceeds of such crops, including the proceeds of any incentive or other similar payments made by the United States on such crops and the proceeds of any insurance on such crops; and

"5. Such amount has been insufficient to repay the advances in full,

then the Regional Agricultural Credit Corporation of Washington, D. C., will not look to other assets of the makers for the repayment of that part of the advances which exceeds such proceeds but will cancel the makers' obligation for the balance of the advances."

Although the note was in the principal sum of $550, actually only $250 was advanced to defendant.

On July 27, 1943, the defendant wrote the following letter:

"Regional Agriculture Credit Corp.,
Farm Credit Administration,
St. Louis, Mo.
Attention Mr. W. H. McKinley.
"Gentlemen:
"Enclosed you will find check for $27.84—the full amount realized from the 'essential war crop' of potatoes for which I secured my loan of $250.00, which, incidentally, was less than one third of the amount I invested in 'essential war crop' potato acreage.

"I am sure you are well aware of the disgusting and rotten deal which I and many other Arkansas farmers received from the FDA and the U. S. Agriculture Dept., in regard to buying our 'essential war crop' of potatoes.

"Most of the remainder of my 'essential war crop' (over ten acres) still are in the ground. You are welcome to them. You are also welcome to the one hundred dollars incentive payment the * * * promised me last Spring.

"Certainly it is obvious that 'substantial damage & loss' was 'due to causes beyond my control', and that my debt should be cancelled."

On August 15, 1943, defendant executed a "Request for Cancellation of Special War Crop Advances". In this request defendant stated that the total proceeds he received from the sale of the Irish potatoes was $27.84. Item No. 4 in the request and defendant's answer thereto were as follows:

"Explain fully the cause of the loss of crops or the circumstances which caused failure to realize returns sufficient to repay the advances in full. (Show the date or dates on which losses occurred, and state specifically what efforts were made to save the crops.)

Drought. May 15th to August 15th."

On December 10, 1943, the following letter was written to defendant:

"Dear Sir:
"Your request for cancellation of the balance due on the above note which is $222.16, plus interest, has been declined. This decision is based on evidence showing that proceeds from the sale of crops harvested have not been applied on the note and good husbandry was not practiced in connection with the production of the crops as required in the F-2 note which you signed.

"Taking into consideration the above decision, you are expected to make immediate payment of the balance due, plus interest.

Yours very truly,
/s/ C. W. Wright
C. W. Wright, Chairman
Garland Co. USDA War Board"

The defendant admits that the plaintiff has made written demand upon him for payment of the amount alleged to be due and that he has refused to pay said amount.

In his brief defendant contends that he complied with the requirements of the note and that the loss resulted solely from the fact that there was no market for the potatoes in the Hot Springs area.

Plaintiff, on the other hand, contends that defendant by his own admission did not apply all proceeds from the potatoes in question to the payment of the debt.

The requirements of the note which, if met by the defendant, would relieve defendant from liability on the note, are conditions subsequent which must be established by the defendant. Piowaty v. Regional Agricultural Credit Corp. of Washington, D. C., 160 Fla. 136, 34 So.2d 94, 1 A.L.R.2d 705.

One requirement or condition subsequent of the note is as follows:

"4. The makers have applied to the repayment of the advances an amount equal to all proceeds of such crops, including the proceeds of any

incentive or other similar payments made by the United States on such crops and the proceeds of any insurance on such crops;"

In the instant case the defendant admits that he traded to Stuarts Grocery Store a sufficient amount of the potatoes to pay a bill for $100.12 incurred for fertilizer used to produce the potatoes. Clearly this is a failure on the part of the defendant to apply "all proceeds" of the potatoes to the repayment of the loan. For a somewhat similar case see, United States v. Anderson, D.C.Neb., 125 F. Supp. 641, where the court said:

"In the year 1951, Harold Anderson, who was farming in Boone County, obtained three indirect Commodity Credit Corporation loans on 1950 stored corn. * * *

* * * * * *

"During the winter of 1951–52, defendant used, without request or permission from any Government Agent, approximately 200 bushels of corn stored in the large cement crib as feed for his chickens. The defendant did not attempt to conceal this fact from anyone, including the Government agents.

* * * * * *

"The contract pursuant to which the loan in issue was made, among other things, provides:

" '(6) If the Producer has made a fraudulent representation herein, in the chattel mortgage, or in obtaining the loan, or if any portion of the commodity has been converted or unlawfully disposed of by the Producer, the Producer shall be and remain personally liable to the holder of the note for the amount due on the loan, and for any amount which any holder of the note pays in order to protect or retain his interest in the commodity, and for the amount of any loss or liability incurred by any holder of the note as a result of such fraudulent representation, conversion, or unlawful disposition.'

"Since it is undisputed that defendant did unlawfully convert a portion of the corn, to-wit, approximately 200 bushels, to his own use, it seems inescapable that he is liable for the amount due under the loan because the contract specifically provides that 'if any portion of the commodity has been converted or unlawfully disposed of by the Producer, the Producer (defendant herein) shall be and remain personally liable to the holder of the note for the amount due on the loan, * * *'."

In view of the failure of the defendant to apply all the proceeds of the potatoes to the repayment of the loan, the Garland County U. S. Dept. of Agriculture War Board was fully justified in refusing to cancel the balance due on the note.

■ The remaining contention of defendant is that representations were made to him and other farmers that the price of the potatoes to be produced under the program would be supported at a price level of $2.25 per hundred pounds; that the plaintiff failed to maintain the market price of the potatoes and the defendant was unable to sell his potatoes and pay the plaintiff.

The difficulty with this contention of defendant is that no agent of the plaintiff had authority to make such representations. In this connection, see United States v. Bonderer, D.C.Mo., 139 F.Supp. 391, 395, where the court said:

"The court will take judicial notice of the fact that during the time in controversy herein, there was a severe drought in the area in which the defendant resides and that feed for livestock presented a serious problem. However, since the court is bound by the law, it must be taken as written and interpreted accordingly. The court did not make the law, and the court cannot repeal it. It must be realized that the Secretary of Agriculture and other high public officials cannot set aside or avoid the consequences of the Acts of Congress except in the manner provided in such Acts. See Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122.

Thus, even though defendant may well have relied upon statements made by the Secretary, or other public officials, such reliance will not serve as a defense to this action."

In the potato price support program for 1943 it was specifically provided that the price support would not be a price guaranty for individual sales, and thus no agent of the Government had authority to make such a guaranty. If agents of the Government actually made such representations to the defendant, it is regrettable, but the Court has no power to grant the defendant any relief. Compare the case of United States v. Kinder, D.C.W.D.Ark., 146 F.Supp. 350, 356, where this Court said:

"If in fact Henson and Smith misled defendant it is, of course, unfortunate. But that is one of the pitfalls a person faces when he deals with the Government. In another Federal Crop Insurance Corporation case the court in United States v. Blackburn, D.C.E.D.Mo., 109 F. Supp. 319, 321, said:

" 'In these cases, as in many others in which the Government is involved, cases of hardship are presented. Based upon the information that the defendants were given by representatives of the corporation, they may well have been led to fail to give notice and to give certain information which they were required to give. If the plaintiff were a private insurance company, the matters might present a different issue, but where the Government is a party, the regulations must be strictly complied with. As Mr. Justice Holmes stated in Rock Island, Arkansas & Louisiana R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188: "Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with. * * * At all events the words are there in the statute and the reg-ulations, and the Court is of opinion that they mark the conditions of the claimant's right." ' "

 In view of the foregoing the Court is convinced that there is no material issue of fact, and that plaintiff is entitled to a summary judgment as a matter of law for the amount of $222.16, with interest at 5 percent per annum to date, as provided in the note. The motion of defendant for summary judgment should be denied.

Therefore, a judgment in accordance with the above should be entered.